UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

```
_____
                                        )
JALBERT LEASING, INC. d/b/a C&J         )
     TRAILWAYS;                         )
BONANZA ACQUISITION, LLC;               )
CONCORD COACH LINES, INC. d/b/a         )
     CONCORD TRAILWAYS; and             )
DARTMOUTH TRANSPORTATION                )
     COMPANY, INC. d/b/a                )
     DARTMOUTH MINICOACH,               )   CIVIL ACTION
                                        )   NO. 04-10486-RCL
                                        )
          Plaintiffs,                   )
                                        )
v.                                      )
                                        )
MASSACHUSETTS PORT AUTHORITY,           )
                                        )
          Defendant.                    )
_____)
```

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiffs move for Summary Judgment against Defendant Massport pursuant to Fed.R.Civ.P. 56(a). They contend their Motion should be granted for the reasons below, as there are no genuine issues of material fact that justify or require a trial, and Plaintiffs are entitled to Summary Judgment against Massport as a matter of law.

**I.     <u>Background Summary</u>**

Plaintiffs are each interstate bus carriers, transporting passengers to and from Boston's Logan Airport. Defendant Massport, which operates Logan, has for years imposed a tax, fee or charge on Plaintiffs' interstate operations. Federal law, 49 U.S.C. §14505, prohibits an entity

1

like Massport from imposing "a tax, fee, head charge, or other charge" on such passenger transportation. The Court is called upon to decide if Massport's charges are prohibited by §14505, and if they are, to enjoin their further assessment and collection.

Plaintiffs are actively engaged in interstate, regular route, scheduled bus transportation from points in nearby states to Logan and return, operating under contract with Massport. Under their contracts, Plaintiffs are assessed by and pay to Massport certain fees and charges on their bus transportation. The undisputed evidence establishes that §14505 applies.

This is a legal, not factual dispute, and so summary judgment is appropriate. [1]

## II.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides a Motion for Summary Judgment is to be granted when all the relevant pleadings, viewed in the light most favorable to the non-moving party, present no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Aponte-Santiago v. Lopez-Rivera*, 957 F.2d 40, 41 (1st Cir. 1992); *Olivera v. Nestle Puerto Rico, Inc.*, 922 F.2d 43, 45 (1st Cir. 1990).

The moving party bears the initial burden of showing there are no material issues of fact before the Court. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986). Then, the burden shifts to the non-moving party which must identify any specific facts which may create disputed factual issues. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505,

---

[1] Plaintiffs have standing under §14505 as parties affected by Massport's violation of the statute. *New England Legal Foundation v. Massport*, 883 F.2d 157, 170 (1st Cir. 1989); *Interface Group v. Massport*, 816 F.2d 9, 16 (1st Cir. 1987); *Niagara Frontier Transit Authority,* 658 F.Supp. 247; *See also Northwest Airlines, Inc. v. County of Kent*, 510 U.S. 355, 364 (1994). Further, cases under Chapter 145 of the Interstate Commerce Act, discussed *infra*, involve individual carriers having standing to sue under similar state violation of federal statutory prohibitions.

2510 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986).  Summary judgment is favored "as an integral part of the Federal Rules as a whole" by ensuring the just, speedy, and inexpensive determination of federal actions." *Celotex, supra*, at 327.

      Plaintiffs have shown there are no material facts at issue and that they should prevail as a matter of law.  Their request for summary judgment should be granted.

### III.    Issues

      The ultimate issue before the Court is whether the taxes/fees/charges Massport imposes on Plaintiffs' bus operations violate 49 U.S.C. §14505.  With respect to the explicit provisions of that statute, the issues may be stated as:

      1.    Is Massport an instrumentality of the Commonwealth of Massachusetts or a political subdivision of Massachusetts, within the meaning of 49 U.S.C. §14505?

      2.    Are the fees imposed on Plaintiffs by Massport, as described herein, a "tax, fee, or other charge" within the meaning of 49 U.S.C. §14505?

      3.    Are the fees imposed on Plaintiffs by Massport, as described herein, "taxes fees or other charges" imposed on passengers traveling in interstate commerce by motor carrier, or the transportation of passengers traveling in interstate commerce by motor carrier, or the sale of passenger transportation in interstate commerce by motor carrier, within the meaning of 49 U.S.C. §14505?

## IV.   Argument

### The Controlling Statute

The statute which governs this action is 49 U.S.C. §14505, which provides,

> A State or political subdivision thereof may not collect or levy a tax, fee, head charge, or other charge on (1) a passenger traveling in interstate commerce by motor carrier, (2) the transportation of a passenger traveling in interstate commerce by motor carrier, (3) the sale of passenger transportation in interstate commerce by motor carrier, or (4) the gross receipts derived from such transportation.

The statute was enacted first enacted in the ICC Termination Act of 1995 ("ICCTA") (P.L. 104-88); it has no antecedent in any earlier federal law relating to motor transportation, including the Interstate Commerce Act.

Plaintiffs are aware of only one reported legal action seeking to interpret or apply §14505 since it was first enacted in 1995, a sole state court decision, *Tri-State Coach Lines v. MPEA*, 732 N.E.2d 1137 (Ill.App. 2000), *cert. denied* 738 N.E.2d 936 (2000), discussed specifically, infra, which Plaintiffs assert is not controlling and indeed is clearly erroneous.  With that single exception, this is a case of first impression, and Plaintiffs assert it should be considered by this Court as such.

The "tax, fee, head charge or other charge" language in §14505 has apparently been used verbatim only in two other federal statutes, both relating to transportation, namely 49 U.S.C. §24301 (relating only to Amtrak) and 49 U.S.C. §40116 (relating to air transportation).  The latter was first enacted as what is known as the Anti-Head Tax Act ("AHTA") at 49 U.S.C. App. §1513.  In terms of guidance, this Circuit has interpreted §40116 as it applies to Defendant Massport in *New England Legal Foundation v. Massport* ("*NELF*"), 883 F.2d 157 (1st Cir. 1989).  To the extent there are similarities between §14505 and §40116, Plaintiffs rely on *NELF*

and other cases, *infra*, to support their claim that §14505 prohibits the charges Massport now imposes on Plaintiffs.

With reference to §14505, the Court must make three findings for plaintiffs to prevail, namely (1) Massport acts in the role of the State or a political subdivision, (2) the charges Massport imposes on Plaintiffs under the Agreements are a "tax, fee, or other charge," and (3) the charges Massport imposes are on either a passenger traveling in interstate commerce by motor carrier, or the transportation of a passenger traveling in interstate commerce by motor carrier, or the sale of passenger transportation in interstate commerce by motor carrier. [2] Based on the facts, the Court should make each of these findings and rule in Plaintiffs' favor.

### Massport is the State For Purposes of §14505

Massachusetts law which created Massport conferred upon it the powers of the state, and thus Massport's actions are covered by §14505. Under Massachusetts law, Massport is created as,

> [A] body politic and corporate . . . , which shall not be subject to the supervision or regulation of the department of public works or of any department, commission, board, bureau, or agency of the commonwealth . . . . The Authority is hereby constituted a public instrumentality and the exercise by the Authority of the powers conferred by this act shall be deemed and held to be the performance of an essential government function. Mass.Gen.L. c. 91 App. §1-2.

The courts which have reviewed Massport's status under the similar airline law, §40116, have made the finding that it stands as the state for purposes of the federal statute. ("Massport is a public instrumentality of the Commonwealth of Massachusetts." *NELF* at 159; *Interface Group*, *supra*, 816 F.2d at 12.)

Thus, the Court should make the first necessary finding in Plaintiffs' favor.

5

<u>The Charges Imposed On Plaintiffs Are Covered by §14501</u>.

Massport assesses a charge/fee on each of Plaintiffs' departures for all scheduled service from Logan. Each plaintiff is properly authorized to perform interstate bus service and each operates between 17 and 24 schedules daily. See Affidavit of James Jalbert of Plaintiff C&J (hereafter "<u>Jalbert Aff</u>."), ¶¶4, 5, 6; Affidavit of Donald Ross of Plaintiff Bonanza (hereafter "<u>Ross Aff</u>."), ¶¶4, 5, 6, 7; and Affidavit of Harry Blunt of Plaintiff Concord (hereafter "<u>Blunt Aff</u>."), ¶¶4, 5, 6, 7. Collectively, Plaintiffs transported 516,933 passengers to and from Logan in 2003. <u>Jalbert Aff</u>. ¶8; <u>Ross Aff</u> ¶9; <u>Blunt Aff</u>. ¶9. Each Plaintiff paid Massport a per departure charge of $1.50 for each trip as required by the agreement they were required to enter into with Massport to serve Logan. <u>Jalbert Aff</u>. ¶¶11, 12, 15, 16; <u>Ross Aff</u> ¶¶11, 12, 15; <u>Blunt Aff</u>. ¶¶12, 13, 15, 16, 17. It seems self-evident that if Massport charges Plaintiffs each time one of Plaintiffs' buses departs, this is a "tax, fee, or other charge" within the law's meaning, indirectly on "passengers traveling in interstate commerce" and/or directly on "the transportation of passengers traveling in interstate commerce."

Indeed, the Agreement with Massport which each Plaintiff is required to sign to be able to operate at Logan airport makes repeated reference throughout to "fees" and "charges." <u>Jalbert Aff</u>. ¶13 and Ex. B.; <u>Ross Aff</u> ¶13 and Ex.C.; <u>Blunt Aff</u>. ¶14 and Ex. B. Each Massport invoice by which Plaintiffs are requested to pay clearly shows a "per departure" charge. <u>Jalbert Aff</u>. ¶¶16, 17 and Ex. D.; <u>Ross Aff</u> ¶¶15, 16 and Ex.D.; <u>Blunt Aff</u>. ¶¶16, 17 and Ex. C. Massport's own use of "fee" and "charge" removes any doubt that it is imposing on Plaintiffs what §14505 says it may not impose.

---

[2] Plaintiffs concede Massport's charge is neither a "head charge" nor is it imposed on Plaintiffs' gross receipts, both of which are explicitly prohibited by §14505.

The following section of the argument includes reference to many cases holding that the phrase "tax, fee or other charge" is to be interpreted as broadly as the language would suggest. Based on those cases, *infra*, there can't be any meaningful question that the $1.50 per departure (soon to be raised to $4.50 and then again to $7.50 [3]) is a tax, fee or charge. The only question open to any debate is whether the amounts are imposed on those activities specified in §14505. The following section explains why they are.

The Charges Imposed on Plaintiffs Are
<u>Charges On Plaintiffs' Activities Covered by §14501</u>

The key issue is whether Massport's fee/charges are imposed on activities specified in §14505. Every reasonable interpretation of the statute suggests they are.

On this point, cases interpreting AHTA seem to provide the most guidance. Section §14505 appears to be an adaptation of AHTA, an earlier, similar law affecting the airlines. It "appears" to be, because the language is so similar, both statutes are found in Title 49 of the U.S. Code relating to transportation, and both seem to address the issue of individual state charges disrupting the national transportation policy of promoting a uniformly regulated interstate transportation system. [4] AHTA is at once similar to but still different from §14505. AHTA's subparagraph (b) is virtually identical to §14505:

> (b) Prohibitions. Except as provided in subsection (c) of this section and section 40117 of this title, a State, a political subdivision of a State, and any person that has purchased or leased an airport under section 47134 of this title, may not levy or collect a tax, fee, head charge, or other charge on (1) an individual traveling in air commerce; (2) the

---

[3]   <u>Jalbert Aff</u>. ¶18;  <u>Ross Aff</u> ¶17;  <u>Blunt Aff</u>. ¶18 and Ex. D.

[4] In *R. Mayer of Atlanta v. City of Atlanta*, 158 F.3d 538 (11th Cir. 1998), *cert denied*, 526 U.S. 1038 (1999), in interpreting a related motor carrier preemption statute, 49 U.S.C. §14501, the Court applied interpretations arising in cases dealing with similar language applicable to air carriers, since that's where the language came from. This case is discussed further, *infra*.

7

transportation of an individual traveling in air commerce; (3) the sale of air transportation;  or (4) the gross receipts from that air commerce or transportation.

However, unlike §14505, §40116 includes a subparagraph (e) which modifies the otherwise absolute prohibition on taxation in subparagraph (b) as follows:

> (e) Other allowable taxes and charges.  Except as provided in subsection (d) of this section, a State or political subdivision of a State may levy or collect  (1) taxes (except those taxes enumerated in subsection (b) of this section), including property taxes, net income taxes, franchise taxes, and sales or use taxes on the sale of goods or services;  and (2) reasonable rental charges, landing fees, and other service charges from aircraft operators for using airport facilities of an airport owned or operated by that State or subdivision.

In other words, AHTA first prohibits all taxes, fees and charges but then expressly permits specified fees and charges.

The language seems clear enough.  When the Supreme Court analyzed it, it found that statute to be "hardly ambiguous." [5] *Northwest Airlines, Inc. v. County of Kent,* 510 U.S. 355, 365 (1994), adding,

> The AHTA prohibits States and their subdivisions from levying a "fee" or "other charge" "directly or indirectly" on "persons traveling in air commerce or on the carriage of persons traveling in air commerce."  49 U.S.C. §1513(a) [now 49 U.S.C. §40116(b)]. Landing fees, terminal charges, and other airport user fees of the sort here challenged fit §1513(a)'s description.   As we confirmed in an opinion invalidating a state tax on airlines' gross receipts, §1513(a)'s compass is not limited to direct "head" taxes.  *Aloha Airlines*, 464 U.S., at 12-13, 104 S.Ct., at 295.

The Court at 365-66 went on to explain what is now §40116(e):

> But §1513(a) does not stand alone.  That subsection's prohibition is immediately modified by §1513(b)'s [now §40116(e)] permission.  *See Wardair Canada Inc. v. Florida Dept. of Revenue,* 477  U.S. 1, 15-16, 106 S.Ct. 2369, 2376- 2377, 91 L.Ed.2d 1 (1986) (Burger, C.J., concurring in part and concurring in judgment) (§1513(b)'s saving clause was enacted in response to the States' concern that §1513(a)'s "sweeping provision

---

[5]  The Supreme Court's finding that §14505 is clear is due more deference than the finding of ambiguity by the Illinois Court in *Tri-State*, not only because of its place in the judicial hierarchy, but because common sense says the wording of §14505 could not be any clearer.  Reasonable people might argue about the statute's underlying policy, but not about the language.

would prohibit even unobjectionable taxes such as landing fees ..."). Sections 1513(a) and (b) together instruct that airport user fees are permissible only if, and to the extent that, they fall within §1513(b)'s saving clause, which removes from §1513(a)'s ban "reasonable rental charges, landing fees, and other service charges from aircraft operators for the use of airport facilities."

The Court added in its footnote 9 at page 366,

> The Airport's argument, . . . that user fees are entirely outside the scope of the AHTA because they are not "head" taxes, advances an untenable reading of the statute. We note, in this regard, §1513(b)'s recognition, in its first clause, of "taxes *other than those enumerated in subsection (a) of this section*, including property taxes, net income taxes, franchise taxes, and sales or use taxes on the sale of goods or services" (emphasis added). Unlike the property and income taxes listed in the first clause of §1513(b), the airport user fees listed in §1513(b)'s second clause are *not* described as taxes "other than those enumerated in subsection (a)." The statute, in sum, is hardly ambiguous on this matter: User fees are covered by §1513(a), but may be saved by §1513(b).

The Court's analysis of AHTA in *Northwest* is altogether consistent with its earlier treatment of the same issue in *Aloha Airlines, Inc. v. Director of Taxation of Hawaii,* 464 U.S. 7 (1983). There, in holding AHTA precluded Hawaii from imposing its own gross receipts tax on air transportation, the Court rebuffed Hawaii's argument that the statute was somehow unclear:

> We find no paradox between §1513(a) and 1513(b). §1513(a) preempts a limited number of state taxes, including gross receipts taxes imposed on the sale of air transportation or the carriage of persons traveling in air commerce. §1513(b) clarifies Congress's view that the States are still free to impose on airlines and air carriers "taxes other than those enumerated in subsection (a)," such as property taxes, net income taxes, and franchise taxes. While neither the statute nor its legislative history explains exactly why Congress chose to distinguish between gross receipts taxes imposed on airlines and the taxes reserved in §1513(b), the statute is quite clear that Congress chose to make the distinction, and the courts are obliged to honor this congressional choice. 464 U.S. at 10.

The statute here before the Court, §14505, includes the same broad prohibition against the imposition of all sorts of fees as appears in the AHTA, but none of the "saving" provisions which appear in what is now §40116(e).

Unlike in AHTA, in §14505, Congress did *not* express any view that states are still free to impose some specified taxes, fees, or charges. Section 14505 was first enacted in December,

9

1995, nearly two years following the January 24, 1994 Supreme Court decision in *Northwest* and more than a decade following *Aloha*. Since both §14505 and §40116 appear in Title 49 and both relate to transportation, it would appear Congress knew exactly what it was doing when it left out these "savings" provisions. [6]

In any event, §14505 is clear on its face; there is no limitation on the prohibitions in §14505; there is no need to look any further. Following well established law on this issue, "[W]hen a federal statute unambiguously forbids the States to impose a particular kind of tax on an industry affecting interstate commerce, courts need not look beyond the plain language of the federal statute to determine whether a state statute that imposes such a tax is preempted." *Aloha*, at 12. [7] Had the *Tri-State* court applied federal - rather than parochial state - analysis, it would have reached a similar conclusion.

This same sort of issue, but on the "flip side," was considered in *Wardair Canada v. Florida Department of Revenue*, 477 U.S. 1, 17, 106 S.Ct. 2369 (1986) where Chief Justice Burger, in his concurrence said,

> Just as we need not look beyond the plain language "when a federal statute unambiguously *forbids* the States to impose a particular kind of tax on an industry affecting interstate commerce," *Aloha Airlines*, 464 U.S., at 12, 104 S.Ct., at 294 (emphasis added), we need not look beyond the plain language of a federal statute which unambiguously authorizes the States to impose a particular kind of tax. Section 1513(b) authorizes state sales taxes on goods used in air commerce. While Congress has not explained exactly why it made the distinction between taxes prohibited under §1513(a) and those permitted under §1513(b), "Congress chose to make the distinction, and the

---

[6] Further support for this conclusion comes from the fact that even for the fees which AHTA allows, they must be "reasonable," meaning that any assessment is one which can trigger all sorts of expensive court arguments to find what is and what is not "reasonable." Congress apparently knew the shortcomings of a "reasonable" standard and sought to avoid them.

[7] Hawaii had asserted its tax was assessed on the airlines, not passengers, so it was not covered by AHTA. The Massport fees, assessed on carriers, are similarly covered by §14505.

>courts are obliged to honor this congressional choice." 464 U.S., at 12, n. 6, 104 S.Ct., at 294, n. 6.

Here, §14505 expressly prohibits all such fees and charges and allows none. There is no need to look beyond the plain language, *Tri-State* notwithstanding. Congress chose not to permit any such fees and charges on bus transportation, and the court must honor what Congress has enacted.

From another perspective, the application of §14505 to Plaintiffs is also clear from the lone, earlier known case dealing with AHTA as it relates to bus transportation. There are many cases under AHTA addressing fees assessed to airport vendors such as car rental franchises, but only one known case involving interstate ground passenger transportation, *Salem Transportation Company of New Jersey, Inc. v. Port Authority of New York and New Jersey*, 611 F.Supp. 254 (S.D.N.Y. 1985), a case which long predates §14505. Plaintiffs there transported interstate passengers by bus between local airports and claimed the Port Authority's assessment of a gross receipts tax violated AHTA. The Court found the argument to be misguided, saying at page 257,

>There is no evidence that Congress intended that §1513(a) would include a prohibition of fees on ground transportation service. Section 1513(a) was intended to include only air transportation and air commerce *by aircraft* and not other forms of service or transportation which may affect air transportation or air commerce by aircraft.

Ten years later, by enacting §14505, Congress has acted explicitly to fill the "ground transportation" gap identified in *Salem*.

Admittedly, the foregoing cases involve laws relating to air transportation. What about laws relating to motor carrier transportation - including §14505 - as embraced in the current Interstate Commerce Act? Decisions interpreting the federal statutory scheme regulating motor carriers also strongly support Plaintiffs. One part of the federal regulatory scheme is expressed in Chapter 145 of the Interstate Commerce Act, 49 U.S.C. § 14501, *et seq*., titled "Federal-State

11

Relations." The five statutes in that Chapter, including §14505, each is an example of Congress, acting under its "commerce clause" powers, to limit through preemption state intrusions on the otherwise uniform federally regulated interstate transportation system.

While there are no known federal court cases interpreting §14505, there are many cases dealing with its sister statute, 49 U.S.C. §14501, which preempts state and local power to regulate intrastate transportation performed by interstate carriers. In August, 1994, Congress enacted the Federal Aviation Administration Authorization Act of 1994, Pub.L.103-305, which included as Section 601 federal preemption of intrastate trucking [now 49 U.S.C. §14501(b)], which was broadened to include passenger transportation [49 U.S.C. §14501(a)] by the ICCTA. This law was in some circles controversial, since it stripped from states their traditional power of economic regulation of intrastate motor transportation. [8] A number of court challenges ensued, which were all decided by finding Congress' preemption of state economic regulation of motor transportation was vast and it was permissible. [9]

---

[8] This was hardly the first Congressional statement of concern about the inconsistent impact of state action on an otherwise uniform national passenger transportation system. The Bus Regulatory Reform Act of 1982, Pub.L. 97-261, included in §3 "Congressional Findings" the statement "State regulation of the motor bus industry has, in certain circumstances, unreasonably burdened interstate commerce." In §6, the Act provided a new "entry" policy, the effect of which was to preempt much traditional state regulation of intrastate bus licensing. The current "National Transportation Policy" for motor passenger carriers in 49 U.S.C. §13101(a)(3)(C) provides for a federal regulatory system "to ensure that Federal reform initiatives enacted by . . . the Bus Regulatory Reform Act of 1982 are not nullified by State regulatory actions." Congress has a long history of telling states to keep their hands off federally regulated bus transportation, and its power has been upheld in such cases as *Commissioner of Transportation v. U.S.*, 750 F.2d 163 (2nd Cir. 1984), *cert. denied*, 105 S.Ct. 2019 (1985), and *Pennsylvania PUC v. U.S.*, 749 F.2d 841 (D.C.Cir. 1984).

[9] A leading case upholding federal preemption of intrastate trucking under §14501 against a Commerce Clause attack by the states is *Kelley v. United States*, 69 F.3d 1503 (10th Cir. 1995). Cases upholding federal preemption of intrastate bus licensing, enacted in ICCTA, include *Greyhound Lines, Inc. v. New Orleans*, 29 F.Supp.2d 339 (E.D.La. 1998), and *Alex's*

The basic preemption language in §14501 has its genesis in the Airline Deregulation Act of 1978, now codified as 49 U.S.C. §41713(b),[10] "and expressed an intent that §14501(c)(1) and §41713(b) 'function in the exact same manner with respect to [their] preemptive effects." *R. Mayer of Atlanta v. City of Atlanta*, 158 F.3d 538, 545, n. 5 (11th Cir. 1998), cert denied, 526 U.S. 1038 (1999). The courts have consistently applied the interpretation of Airline deregulation language to the same trucking deregulation language, usually making reference to *Morales v. Trans World Airlines,* 504 U.S. 374, 112 S.Ct. 2031 (1992) and its broad interpretation of the reach of federal preemption of state law.

As an example, one nuanced area of federal preemption under §14501 involves state and local regulation of tow trucks. For them, the statute was not exactly clear as to how much states and localities could continue to exercise their own regulation. Clarity was provided by the Supreme Court in *City of Columbus v. Ours Garage*, 536 U.S. 424, 122 S.Ct. 2226 (2002). There are some significant differences between *Ours Garage* and this case, but it nonetheless provides helpful guidance on interpretation of §14505. In essence, in *Ours Garage* the Court was called upon to interpret a statute which said states and localities can't regulate intrastate transportation, but in the next breath said the prohibition didn't apply to certain safety functions. Further, the broad prohibition applied to "States and political subdivisions" while the limitation applied only to "States." The Court struggled in that case with the significance of the language in one part of the statute and its exclusion from another. While the analogy may not be exact, *Ours Garage* at 433-34 cited *Russello v. United States,* 464 U.S. 16, 23 104 S.Ct. 296 (1983) where it

---

*Transportation, Inc. v. Colorado Public Utilities Commission*, 88 F.Supp.2d 1147 (D.Colo. 2000).

[10] The predecessor to this statute was considered in *NELF* at 171.

13

had said, "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks omitted)  While the omission in §14505 of language allowing certain taxes or fees which would otherwise be prohibited is most significant when compared to the language of §40116, even though these are not within the same statute, the relationship between the two laws is so close that the omission in §14505 of any specified allowed taxes or fees is another reason for finding that Massport's charges here are prohibited by §14505.

Finally, the "tax, fee, head charge, or other charge" language is also in the Amtrak related statute, 49 U.S.C. §24301(l)(1), which uses somewhat similar language,

> (l) Exemption from taxes levied after September 30, 1981. (1)  In general.  Amtrak, a rail carrier subsidiary of Amtrak, and any passenger or other customer of Amtrak or such subsidiary, are exempt from a tax, fee, head charge, or other charge, imposed or levied by a State, political subdivision, or local taxing authority on Amtrak, a rail carrier subsidiary of Amtrak, or on persons traveling in intercity rail passenger transportation or on mail or express transportation provided by Amtrak or such a subsidiary, or on the carriage of such persons, mail, or express, or on the sale of any such transportation, or on the gross receipts derived therefrom after September 30, 1981.  In the case of a tax or fee that Amtrak was required to pay as of September 10, 1982, Amtrak is not exempt from such tax or fee if it was assessed before April 1, 1997.

This statute provides less guidance than AHTA; it seems to be written solely for Amtrak, and consists of numerous specific exemptions from laws which might hinder Amtrak's unique role in the national transportation scheme.  Indeed, the major difference is that the statute is clearly enacted to benefit Amtrak and Amtrak only, unlike both §14505 and §14116, which provide protection for all carriers providing transportation by a particular mode.  Nonetheless, the scope of federal prohibition on state taxes and charges embraced in §24301 is also quite broad. The decision in *National Railroad Passenger Corporation v. Pennsylvania Public Utility*

*Commission*, 342 F.3d 242 (3rd Cir. 2003) not only describes the history of this statute in some detail, but vigorously imposes §24301(l) as a shield against any efforts by Pennsylvania to assess charges on Amtrak. In an earlier, similar case, *National Railroad Passenger Corporation v. Pennsylvania Public Utility Commission*, 848 F.2d 436, 438 (3rd Cir. 1988), the Court sought to interpret this statute, saying, "The precise issue here is whether the phrase 'any taxes or other fees' contained in this statute covers charges of the nature levied against Amtrak for building and maintaining [an overpass] bridge." The Court found all factors, including the statute's clear text (as well as Amtrak's unique status and exhaustive legislative history)[11], required a holding that Amtrak was exempt from these efforts by the state to impose charges. *Id,* at 440.

The statute governing Plaintiffs' operations, §14505, admittedly applies to private entities, not quasi-government Amtrak, but the Court's broad holding of the prohibition in the rail standard is based at least in part on the clear text of the rail statute, which is even more clear in §14505.


Plaintiffs Should Prevail Regardless of
The *Tri-State Coach Lines* Illinois State Court Decision

Presumably, Massport will rely heavily on the Illinois *Tri-State Coach Lines* decision, the single known case interpreting §14501, but such reliance is misplaced. Plaintiffs assert *Tri-State*

---

[11] It is true that §14505 lacks the exhaustive legislative history of the rail statute, as set forth in detail, for example, in *National Rail*, *supra*, 342 F.3d at 247, but by the same token, it is clear that Congress had nearly 20 years experience with this prohibitory language in transportation when it did enact §14505, so it is reasonable to assume Congress was aware of the breadth of such language.

15

is at best an aberration, and more realistically provides no guidance for this Court; that's why Plaintiffs assert this is a matter of first impression.

Assuming for argument *Tri-State* is a defensible decision, as a decision by an Illinois state court, it does not establish a rule of law in the First Circuit.

However, *Tri-State* is not defensible. This is a state mid-level court interpreting a federal statute and the scope of federal preemption without citation to or reliance on even a single federal court decision as to preemption. For example, *Tri-State*'s rationale is expressed in the statement, "A presumption exists in every preemption case that Congress did not intend to supplant state law," 732 N.E.2d at 1148, a state-centric judicial philosophy that seems of another era when held up against an unbroken line of modern federal decisions interpreting federal preemption over state control of transportation in the broadest terms. There are recognized judicial tests for reviewing federal preemption, but except in Illinois, they don't begin with a presumption that it is invalid. [12]

Seemingly unaware of the U.S. Supreme Court decisions that the language of §14505 is "hardly ambiguous" (*Tri-State* made no reference to the origin of the language in other federal statutes or earlier Supreme Court interpretations of it), the Illinois court found it must make its own investigation into Congressional intent because it found ambiguity in the meaning of "interstate commerce," 732 N.E. 2d at 1146, since unlike this case, some of the ground transportation there did not cross a state line. Even where it did cross a state line, the Illinois Court allowed a state tax because there was "an absence of any 'unmistakably clear' expression of congressional intent to preempt the imposition of a state or local tax on commercial motor carrier departures from an airport." 732 N.E.2d at 1150. Plaintiffs assert that such rationale,

16

which underlies the *Tri-State* decision, defies the clear language of §14505, Supreme Court guidance, and even basic logic. [13]

While Plaintiffs acknowledge *Tri-State* exists, they assert the analysis they have urged in their argument - not that employed in *Tri-State* - is the correct analysis, and that applying the correct analysis will lead to the conclusion Massport may not impose its fees/charges.

## V.   CONCLUSION

This case sets before the Court the issue of congressional exercise of its Commerce Clause powers, including those over local regulation of interstate carriers. The width and breadth of this power is not a new concept; nearly a century ago the Supreme Court in the context of federal preemption over state transportation regulation said, "It is the essence of this power that, where it exists, it dominates." *Houston E.W. Texas Rwy. v. U.S.*, 234 U.S. 342, 350 (1914). Congress enacted §14505 which prohibits in clear and unambiguous language the states from taxing interstate bus travel. Congress didn't allow some taxes and fees but not others, it didn't allow taxes and fees at some classes of departure points and not others, it didn't allow taxes and fees on some classes of passengers and not others. Congress used clear and unambiguous language with which it was familiar in transportation law and which the Supreme Court had found to be clear and precise. Congress chose to enact this law prohibiting the charges at issue here; this Court is obliged to honor this congressional choice.

WHEREFORE, Plaintiffs pray that the Court enter summary judgment for Plaintiffs, as requested herein.

---

[12] *R. Mayer of Atlanta, supra,* is one decision with an exhaustive discussion of the federal view.

[13] Using the *Tri-State* logic, there is no clear congressional intent to tax interstate bus trips departing from a bus terminal. It is beyond rational argument that the law applies to the transportation, not the character of the departure point.

17

                                                  JALBERT LEASING, INC. d/b/a C&J TRAILWAYS; BONANZA ACQUISITION, LLC; CONCORD COACH LINES, INC. d/b/a CONCORD TRAILWAYS; and DARTMOUTH TRANSPORTATION COMPANY, INC. d/b/a DARTMOUTH MINICOACH,

                                                  By their attorneys,

April 1, 2004                                    "/s/" Wesley S. Chused
                                                  Wesley S. Chused (BBO #083520)
                                                  LOONEY & GROSSMAN LLP
                                                  101 Arch Street
                                                  Boston, MA 02110
                                                  (617) 951-2800

                                                  Jeremy Kahn
                                                  KAHN & KAHN
                                                  1730 Rhode Island Ave., N.W.
                                                  Suite 810
                                                  Washington, D.C.  20036
                                                  (202) 887-0037

## CERTIFICATE OF SERVICE

    I hereby certify that on April 1, 2004 I served a copy of the foregoing pleading upon all parties hereto electronically or by mailing copies thereof via first class mail, properly addressed, to the following:

                              Roscoe Trimmier, Jr., Esq.
                              Sarah L. Levine, Esq.
                              Ropes & Gray LLP

One International Place
Boston, MA  02110


"/s/" Wesley S. Chused
Wesley S. Chused