UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

_____
                                                )
JALBERT LEASING, INC., et al.,          )          CIVIL ACTION
                                                )          NO. 04CV-10486-RCL
                 *Plaintiffs*,               )
                                                )
v.                                             )
                                                )
MASSACHUSETTS PORT AUTHORITY, )
                                                )
                 *Defendant*.             )
_____)

**Affidavit of Harry Blunt, President**
**Plaintiff Concord Coach Lines, Inc.**
**In Support of Plaintiffs' Motion for Summary Judgment**

**Introduction**

1.      I am Harry Blunt, President and an owner of Plaintiff Concord Coach Lines, Inc.,

doing business as Concord Trailways ("Concord").  Concord is a New Hampshire corporation

whose principal place of business is 7 Langdon Street, Concord, New Hampshire 03301.

2.      As Concord's President, my duties and responsibilities include overall

responsibility for Concord's business.  I am authorized on behalf of Concord to submit this

affidavit in support of Plaintiffs' Motion for Summary Judgment filed in this case.  This

statement is based on my personal knowledge, except as I have indicated otherwise.

3.      I have been in the bus business for more than 35 years, and with Concord since

1969.  I am personally quite active in bus industry trade associations.  My statement is based, in

part, on my experience with Concord and within the industry.

**Concord Coach Lines**

4.      Concord is a regional, interstate bus company, whose primary business is

operating scheduled bus service generally between Boston and points in New Hampshire and Maine.

5.      As an interstate bus company, Concord's business is regulated by the Federal Motor Carrier Safety Administration ("FMCSA"). Concord conducts its scheduled service under a Certificate originally issued by the Interstate Commerce Commission (the predecessor agency to FMCSA) in Docket MC-l16140.

6.      As it relates to this lawsuit, Concord provides scheduled bus service to and from Boston's Logan Airport over two different routes. One route is from Concord, New Hampshire, via Manchester, New Hampshire on to Logan, and return, which routes also include service on some schedules to Berlin and Littleton through North Conway and Plymouth.  The second route is from Portland, Maine to Logan, and return, which routes also include service on some schedules to Bangor, Maine and/or other points on Maine's Coast, such as Searsport, Belfast, Camden/Rockport, Rockland, Waldoboro, Damariscotta, Wiscasset, Bath, Brunswick, and also the University of Maine campus in Orono and Bowdoin College in Brunswick.

7.      Attached as **Exhibit A** is a copy of that portion of Concord's current schedule, showing 12 daily trips from Concord to Logan and return and 12 daily trips from Portland to Logan and return.  Each schedule is operated by one coach, which picks up or drops off passengers at the various intermediate points along the route.

8.      On each scheduled trip, a Concord bus enters the Airport to drop off and pick up passengers at bus stops designated by Massport at each passenger terminal, departing at the time shown on the schedule.

9.      As an example of the number of passengers which Concord has carried in performing this service, during calendar year 2003, Concord transported approximately 30,017

passengers from Logan over the Concord route and approximately 72,914 passengers from

Logan over the Portland route.

10.    To my best knowledge and based on my experience, during an ordinary month,

almost all (at least 99%) of the passengers who ride Concord service to/from Logan are either

riding to Logan to board a flight to an out-of-state destination or have just deplaned from an

airplane arriving at Logan from an out-of-state origin.

11.    Concord has been providing service to and from Logan since approximately 1981.

12.    Since at least 1985, Concord's operations at Logan have been subject to Concord

entering into a "Commercial Ground Transportation Operating Agreement" ("Agreement") with

Massport.  To my best knowledge, Concord's current such Agreement with Massport is that

dated February 23, 1995, which remains in effect through automatic renewal.  I have attached a

copy of that Agreement as **Exhibit B.**

13.    To my best knowledge, Massport will not allow a bus company to provide

scheduled bus service to and from Logan unless and until it has entered into a similar agreement

to that in Exhibit B.

14.    The Agreement contains a number of items which relate to this lawsuit. There are

many provisions relating to charges assessed against Concord.  As examples, ¶4.2 makes

reference to "other charges" which Massport imposes in addition to "base rates"; ¶4.3 makes

reference to "fees, charges or base rates"; ¶4.4 makes reference to "fees" and "charges"; and ¶4.7

refers to "other charges related to or incidental to the conduct of [Concord's] activities at Logan

Airport."  Also ¶11.3 lists the different types of payments for which Concord may be liable as

"base rates, fees, charges, interest, costs, assessments, fines, and damages."

15.    As has been the case until the present, under the Agreement Concord has been

charged by Massport $1.50 for each scheduled departure.  After discussing this with counsel and

other bus companies, Concord now believes this is the type of charge which is prohibited by the

Federal law which is the basis for our lawsuit.

16.    Concord considers the $1.50 per trip charge it to be a charge assessed on

passenger transportation, since it is a separate and distinct charge assessed on each departure

where Concord is carrying passengers.  The charge is assessed by Massport, which appears to be

a public entity.

17.    Attached as **Exhibit C** is a copy of the January 7, 2004 Massport invoice relating

to this charge assessed for Concord for December, 2003.  The invoice shows that this is a

separate billing, with charges assessed on a "per trip" basis.  The charge for December was

$550.50.  This is the only charge shown on the invoice.  For 2003, Concord paid a total of

$6,660.00 to Massport for this fee.

18.    This $1.50 per trip charge has been in effect for a number of years.  In January,

2004, Massport announced that it would triple the charge to $4.50 per trip effective April 1,

2004, and then increase it again to $7.00 per trip effective April 1, 2005.  Attached as **Exhibit D**

is a copy of an article from the January 16, 2004 *Boston Globe* which describes this

announcement.

19.    With this per trip charge to be tripled on April 1, 2004, Concord will be harmed.

20.    If Concord doesn't raise passenger fares, Concord will lose money by this

additional expense.  Concord operates at a low margin of profit, and this additional expense

would eat into that.

21.    If Concord tries to pass along the fee increase by raising passenger fares, I believe

the company would lose some passengers and their revenue.  All bus passengers, including those

traveling to the airport, are price sensitive. Almost all Concord's Logan passengers have options. These include driving their own car, having a family member or friend drive them, or using one of the many airport shuttle services. Based on experience, on this type of service, an increase in fares will likely result in a net loss of revenue and corresponding loss of profit.

22.     Also, to the extent Concord loses riders who choose to use private autos instead, this would serve to frustrate the national goal of promoting intermodal transportation, i.e., bus to air coordinated service. From my active participation in the industry and with Concord a member of the National Trailways Bus System, I am aware of these national goals.

23.     Massport has been charging Concord $1.50 per trip for a number of years. Concord paid that amount without challenging it. Recently, we became aware of §14505. Knowing there is a legal basis to challenge the fee and with the tripling of the fee, Concord now believes a challenge is in its best interest.

### Verification

I, Harry Blunt, President of Concord Coach Lines, Inc., verify under penalty of perjury under the laws of the United States of America, that I have read the foregoing statement, that I am qualified and authorized to make that statement, and that all the information therein is true and correct.

"/s/ _____"
Harry Blunt

Dated:   March 18, 2004