# JALBERT EXHIBITS

# PART #1

# EXHIBIT A

## Portsmouth/Logan Airport Schedules

### Southbound: Portsmouth – Newburyport – Logan Airport

|   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   | B | B |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LV | Portsmouth | 3:50 | 5:00 | 6:00 | 7:00 | 8:00 | 9:00 | 10:00 | 11:00 | 12:00 | **1:00** | **2:00** | **3:00** | **4:00** | **5:00** | **6:00** | **7:00** | **8:00** |
| LV | Newburyport | 4:15 | 5:30 | 6:30 | 7:30 | 8:30 | 9:30 | 10:30 | 11:30 | 12:30 | **1:30** | **2:30** | **3:30** | **4:30** | **5:30** | **6:30** | **7:30** | **8:30** |
| AR | Logan | 5:05 | 6:15 | 7:15 | 8:30 | 9:30 | 10:15 | 11:15 | 12:15 | **1:15** | **2:15** | **3:15** | **4:15** | **5:15** | **6:15** | **7:15** | **8:40** | **9:40** |

B = via Boston/South Station
**Bold** = PM

### Northbound: Logan Airport – Newburyport – Portsmouth

|   |   |   | X67H |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LV | Logan | 5:50 | 6:50 | 7:50 | 8:50 | 9:50 | 10:50 | 11:50 | **12:50** | **1:50** | **2:50** | **3:50** | **4:50** | **5:50** | **6:50** | **7:50** | **8:50** | **9:50** | **11:50** |
| AR | Newburyport | 6:50 | 7:50 | 8:50 | 9:50 | 10:50 | 11:50 | **12:50** | **1:50** | **2:50** | **3:55** | **4:55** | **5:55** | **6:55** | **7:55** | **8:50** | **9:50** | **10:50** | **12:50** |
| AR | Portsmouth | 7:15 | 8:15 | 9:15 | 10:15 | 11:15 | **12:15** | **1:15** | **2:15** | **3:15** | **4:20** | **5:20** | **6:20** | **7:20** | **8:20** | **9:15** | **10:15** | **11:15** | **1:15** |

X67 = No service on weekends
**Bold** = PM

**Please note:** Buses begin picking up at Terminal B and end at Terminal E.
Scheduled pickup times originate at Terminal B and then proceeds to Terminals C & E.

# EXHIBIT B

T-0764

# MASSACHUSETTS PORT AUTHORITY
# BOSTON-LOGAN INTERNATIONAL AIRPORT

## COMMERCIAL GROUND TRANSPORTATION SERVICE OPERATING AGREEMENT

This Commercial Ground Transportation Operating Agreement (the "Operating Agreement") dated as of February 27, 1995, ("commencement date") is made between the **MASSACHUSETTS PORT AUTHORITY** (the "Authority"), a body politic and corporate organized and existing in accordance with Chapter 465 of the Massachusetts Acts of 1956, as amended, and **JALBERT LEASING, INC. DBA C & J TRAILWAYS** ("the operator"), a New Hampshire corporation with a usual place of business at Sumner Drive, Dover, NH 03820.

WHEREAS, the Authority is the owner and operator of the General Edward Lawrence Logan International Airport in East Boston, Massachusetts ("Logan Airport"); and

WHEREAS, the Operator desires to operate as a Commercial Ground Transportation Service Operator at Logan Airport, as more fully described in the Authority's Commercial Ground Transportation Services Rules and Regulations at Boston-Logan International Airport ("Regulations") codified at 740 CMR 23.00 et. seq., a copy of which has been provided to Operator; and

WHEREAS, the Authority desires to grant to Operator the right to conduct such services at Logan Airport on the terms and conditions set forth below;

NOW, THEREFORE, in consideration of the terms and conditions contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Authority and Operator agree as follows:

### ARTICLE 1 - SUMMARY OF BASIC TERMS

1.1 <u>Introduction.</u> The following sets forth the basic data pertaining to this Operating Agreement, and, where appropriate, constitutes the definitions of the terms listed.

1.2 <u>Basic Terms</u>

| | |
|---|---|
| <u>Operator's Mailing Address</u> | Mr. James M. Jalbert<br>C & J Trailways<br>P.O. Box 190<br>Dover, NH 03821-0190 |
| <u>Term:</u> | One month (plus the partial calendar month, if any, after the Commencement Date), and thereafter on a month to month basis as provided in Section 2.1. |

-2-

**Permitted Services (please check applicable item):**

a. Authorized Courtesy
   Vehicle Service                                    _____

b. Delivery Vehicle Service
   (i) Courier Service                                _____

c. Limousine Service
   (i) Scheduled Limousine                            _____
   (ii) Unscheduled Limousine                         _____

   Motor Bus Service
   (i) Charter Motor Bus                              _____XXX_____
   (ii) Scheduled Motor Bus                           _____

e. Suburban Taxicab Service
   (i) Suburban Taxicab
       Without a Medallion
       or a Taxicab License
       Plate                                          _____

**Base Rates:**   See Sections 4.2, 4.3 and Exhibit B.

1.3 **List of Exhibits.** The exhibits listed below are made a part of this Operating Agreement and are incorporated by reference:

Exhibit A: Operational Procedures
Exhibit B: Base Rates Per Trip
Exhibit C: Vehicle Listing sheet
Exhibit D: Certificate of Compliance with Laws
Exhibit E: Non-Discrimination and Affirmative Action

## ARTICLE 2 - TERM

2.1 **Term.** The Term of this Operating Agreement shall commence on the "Commencement Date" and shall be for the period specified in Section 1.2 unless extended or earlier terminated as provided herein.

2.2 **Automatic Extension.** The Term of this Operating Agreement shall extend automatically from month to month without the requirement of any further instrument or approval upon all the same terms and conditions set forth in this Operating Agreement, provided, however, that the Operator or the Authority may terminate this Operating Agreement without cause at the end of any calendar month by providing notice of termination to the other not less than thirty (30) days prior to the end of such calendar month in which event this Operating Agreement shall expire on midnight of the last day of such calendar month.

-3-

## ARTICLE 3 - PERMITTED SERVICES

3.1 **Permitted Services**. The Operator may provide, consistent with the terms and conditions set forth in this Operating Agreement, the Permitted Services specified in Section 1.2. Operator shall provide no other services at Logan Airport unless expressly agreed to by the parties pursuant to a written amendment hereto.

3.2 **Passenger Discharge and Pick Up**. Operator shall discharge and pick up all passengers, packages, goods, luggage or similar items to, at, within, or from the passenger terminals at Logan Airport in accordance with the applicable operational procedures as set forth in Exhibit A as may be amended or supplemented by the Authority in its sole discretion from time to time upon twenty-four (24) hours prior notice to Operator.

3.3 **Fares and Routes**. Operator shall provide the Authority with a copy of its fares for all Permitted Services at Logan Airport (to be attached hereto as Exhibit G). Operator shall charge only those fares which are on file with the Authority. Each Operator conducting scheduled services shall provide the Ground Transportation Manager, with a detailed description of its service routes to and from Logan Airport.

3.4 **Consent to Publication of Schedules and Timetables**. Operator consents to the Authority's publishing, for the use of the traveling public, route, fare and timetable information concerning Operator's services at Logan Airport. (The Authority shall not be liable for errors in such publications, but shall make good faith efforts to correct errors which are called to its attention in writing by Operator.) Operator must notify the Authority of any changes in its fare and timetable information at least thirty (30) days in advance of the effective date of said change.

3.5 **Monthly Ridership Report**. Each Operator conducting scheduled services at Logan Airport as part of its Permitted Services, shall submit to the Ground Transportation Manager, a Monthly Ridership Report by the tenth (10th) day of the month following the month in which the ridership activity occurred. The Monthly Ridership Report shall include, but is not limited to, the total number of passengers carried inbound and the total number of passengers carried outbound on a per route basis. The Authority shall not disclose the contents of the Monthly Ridership Report to others unless legally required to do so.

3.6 **Current and Additional Information**. Operator shall promptly give notice to Authority of any change of its corporate or company name, business address, mailing address, or principal owner(s) and/or officer(s). The Authority expressly reserves the right, from time to time, to direct the Operator to submit to the Authority such other additional information on Operator's activities at Logan Airport as the Authority shall from time to time reasonably request.

-4-

### ARTICLE 4 - FEES AND OTHER CHARGES

4.1 **Method of Payment.** For the use of the facilities at Logan Airport and other rights herein granted, the Operator shall within thirty (30) days of the date of invoice remit monthly payment to the Authority at the following address:

Massachusetts Port Authority
P.O. Box 5853
Boston, MA 02206

4.2 **Base Rates and Other Charges.** Operator shall during the Term of the Operating Agreement pay to the Authority the applicable base rates and other charges set forth in the fee schedule attached hereto as Exhibit B, as may be amended from time to time in accordance with the procedures set forth in Section 4.3.

4.3 **Establishment of New Base Rates.** In the event the Authority establishes new fees, charges, or base rates for the operation of commercial ground transportation vehicles serving Logan Airport, Operator agrees that it shall be subject to and obligated to pay in accordance with the revised fee schedule, provided Authority notifies Operator at least sixty (60) days prior to the establishment of the new fees, charges or base rates by legal publication in a newspaper of general circulation in Boston, Massachusetts, and by delivering or mailing a copy of the notice of such fees, charges, or base rates to the Operator's last known business address.

4.4 **Accord and Satisfaction.** Operator shall pay all rates, fees, charges and other payments due hereunder without notice, demand, abatement, deduction or offset. No payment by Operator or receipt by the Authority of a lesser amount than that which is due and payable under the provision of this Operating Agreement at the time of such payment shall be deemed to be other than a payment on account of the earliest payment then due, nor shall any endorsement or statement on any check or in any letter accompanying any check or payment be deemed an accord and satisfaction. The Authority may accept any check or payment without prejudicing in any way its right to recover the balance of such account or to pursue any other remedy provided in this Operating Agreement or by law.

4.5 **Payment of Fines.** Upon demand from the Authority, the Operator shall pay promptly any and all fines assessed by the Authority on the Operator or the Operator's employees for violations of the Authority's Rules and Regulations subject to any applicable appeal provisions regarding the contesting of such fines.

4.6 **Late Payment Charge.** Upon notice from the Authority that any payment required to be made under this Operating Agreement has not been made within thirty (30) days of the date when due, the Operator shall pay interest on such overdue amount at the rate of one and one-half (1 1/2%) percent per month, or the highest rate permitted by law, which ever is less, commencing on the date such payment was due.

-5-

4.7 **Other Charges.** This Operating agreement shall not prevent the Authority from assessing the Operator other charges related or incidental to the conduct of Operator's activities at Logan Airport. Any such assessment shall be substantially comparable with the rates, fees and charges imposed on other Operators which make similar use of Logan Airport, subject to reasonable classification.

4.8 **Records and Reporting Requirements.** Each Operator shall keep records of all trips made by its commercial ground transportation service vehicles to, at, within or from Logan Airport for a period of one year. If a longer period is required by local, state or federal authorities, each Operator shall maintain the records in accordance with those regulations. Each Operator shall make the records available to the Authority at Logan Airport upon its written request.

### ARTICLE 5 - PERMITS, LICENSES AND VEHICLE IDENTIFICATION DEVICES

5.1 **Operating Permits, Licenses and Certificates.** Operator represents and warrants that it holds all permits, licenses, certificates, approvals or other entitlements required by federal, state or local ordinance, law, rule, regulation or policy in order to enable the Operator to provide the Permitted Services, and that the same are and will be kept current, valid and complete. Operator shall provide the Authority upon its request with duly certified copies of such permits, licenses, certificates, approvals and other entitlements or upon submission of an Application for an Operating Agreement. Operator further represents and warrants that it shall at all times abide by and conform with all terms of the same and that it shall give immediate notice to the Authority of any additions, renewals, amendments, revocations, or suspensions of the same that affect the conduct of its operations at Logan Airport.

-6-

5.2 <u>Vehicle Permits.</u> Operator shall submit to the Authority a completed vehicle listing sheet in the form of Exhibit C, and a copy of each vehicle's certificate of registration, containing the vehicle identification number, and registration number, year, make, type, color, and passenger capacity of each vehicle to be used in the conduct of the Permitted Services. The Operator shall then obtain from the Authority a vehicle permit or other vehicle identification device for each such vehicle. Each vehicle permit is to be affixed only to the vehicle for which it is issued. Operator shall not provide any services under this operating Agreement with a vehicle not displaying a valid and current vehicle permit. Operator may supplement the foregoing vehicle listing through the use of additional vehicles in the provision of Permitted Services provided, however, said vehicles have been leased to the Operator for at least ninety (90) days. To avoid unnecessary traffic congestion or air pollution at Logan Airport, the number of vehicle permits to be issued to Operator may be limited at the sole discretion of Authority to the number of vehicles reasonably necessary to provide the Permitted Services. In the event of default, termination, revocation, recision, abandonment, or suspension for multiple violations or multiple warnings, Operator shall, upon written request of the Authority, surrender and deliver up to the Authority forthwith said vehicle permits furnished by the Authority.

ARTICLE 6 - VEHICLES, DRIVERS AND OPERATOR IDENTIFICATION

6.1 <u>Commercial Ground Transportation Service Vehicle.</u> Operator represents and warrants that each commercial ground transportation service vehicle designated to provide the Permitted Services under this Operating Agreement is suitable in design and condition for such use. Operator further represents and warrants that each commercial ground transportation service vehicle shall be maintained in a safe and clean condition in accordance with such reasonable standards as the Authority may from time to time direct. A police officer, hackney officer, or any other authorized representative of the Authority shall, in accordance with applicable law, have the right, at any time a commercial ground transportation service vehicle is on Logan Airport, to make a reasonable inspection of the vehicle to insure said compliance.

6.2 <u>Approval to Operate.</u> Operator's drivers and employees shall at all times hold, and maintain on their persons or in their commercial ground transportation service vehicle while in the course of their duties, valid and current operating licenses, permits, and certificates as may be required by federal, state and local laws, ordinances and regulations which are necessary for conducting commercial ground transportation services to, at, within or from Logan Airport. The Authority may at any time demand and make reasonable inspection of the certificates, permits and licenses of any driver at Logan Airport who is engaged in or in the course of providing the Permitted Services.

-7-

6.3    Identification of Operator. Each of Operator's drivers and employees shall wear a name badge or other form of identification clearly identifying the driver or employee by name and/or company.

### ARTICLE 7 - COMPLIANCE WITH LAWS, RULES AND REGULATIONS

7.1    Compliance With Laws. Operator shall observe and obey, and require all of its officers, employees, agents, suppliers and invitees to observe and obey all applicable federal, state and municipal laws, regulations, orders and directives, including all amendments thereto now in existence or hereafter enacted or promulgated, whether seen or unforeseen, including, without limitation, the Rules and Regulations of the Authority, its Management Directives and Executive Director's Memoranda. Operator, its officers, employees, agents, suppliers and invitees shall submit to the enforcement of the Authority's Rules and Regulations by administrative procedures conducted by the Authority's management to the extent that the same are in customary usage at Logan Airport, or by enforcement on complaint of the Authority or appropriate prosecuting officers in the courts of the Commonwealth of Massachusetts.

7.2    Commercial Ground Transportation Services Rules and Regulations. Rules and regulations duly promulgated by Authority which relate to the conduct of commercial ground transportation services at Logan Airport shall be deemed a part of this Operating Agreement with the same effect as though written herein. The right is hereby expressly reserved by Authority to add to, alter, amend, delete, revise and revoke such rules and regulations in whole or in part from time to times as the Authority deems necessary. (Such changes in the rules and regulations shall be binding upon Operator immediately upon the effective date thereof.) The Authority agrees to provide Operator with sixty (60) days notice of any proposed changes in said rules and regulations, except in the event changes are required by emergency.

-8-

## ARTICLE 8 - INSURANCE AND INDEMNIFICATION

8.1 <u>Insurance</u>. Operator will procure and maintain during the term of this Operating Agreement at its own expense the following minimum insurance coverage for the operation of the Permitted Services or arising out of this Operating Agreement:

(1) Comprehensive Public Liability Insurance with primary limits not less than $250,000.00 per person and $500,000.00 per accident or occurrence for bodily injury or death, and not less than $100,000.00 per occurrence or accident for damage to property.

(2) Worker's Compensation and Employers' Liability Insurance as required by law.

Each policy of insurance required hereunder shall be in a form satisfactory to the Authority and with a company that is authorized to do business in Massachusetts. Upon submitting an Application for an Operating Agreement, each Operator shall submit to Authority certificates of insurance for each policy required hereunder. Operator also shall submit to Authority renewal certificates on any expiring insurance not less than ten (10) days prior to the date of expiration thereof. Each such certificate and policy shall contain a valid provision or endorsement that the policy may not be canceled, terminated, changed or modified without the giving of at least ten days' written advance notice thereof to Authority. At the request of the Authority, the Operator shall submit copies of its policies of insurance to the Authority within ten (10) days of any such request.

8.2 <u>Minimum Insurance Limits</u>. The Operator acknowledges that the minimum insurance limits established as of the date of this Operating Agreement may become inadequate during the Term, and Operator agrees that it will increase such limits to such commercially reasonable levels as the Authority may reasonably prescribe from time to time during the Term.

-9-

8.3 <u>Indemnification.</u> The Operator at its sole cost and expense shall indemnify, defend and hold harmless the Authority, its members, officers and employees from and against all claims, causes of action, suits, losses, damages and expenses (including attorneys' fees and experts' fees and disbursements and any and all other costs of investigation and litigation) based upon or arising, directly or indirectly, out of any (i) default, act, omission, or activity of Operator, its contractors, employees, agents, customers or anyone claiming by or through the Operator, including but not limited to, the operation of its business hereunder and any accident, injury or damage whatsoever caused to any person by Operator, its contractors, agents, employees, customers or anyone claiming or acting by or through the Operator, and (ii) the use, disposal, generation, transportation or release of oil or toxic or hazardous materials at Logan Airport by the Operator, its contractors, employees, agents, customers or anyone claiming or acting by or through the Operator, provided that Operator shall not be liable to the extent caused by the gross negligence of the Authority, its employees or agents. The foregoing express obligation of indemnification shall not be construed to negate or abridge any obligation of indemnification running to the Authority which would exist at common law or under other provisions of this Operating Agreement, and the extent of the obligation of indemnification shall not be limited by any provision of insurance undertaken in accordance with the Operating Agreement. The Authority shall endeavor to give the Operator reasonable notice of any claims threatened or made or suits instituted against it which could result in a claim of indemnification hereunder and the Operator shall be given the opportunity to participate in the settlement or defense of any such claims.

## ARTICLE 9 - SIGNS, POSTERS AND ADVERTISING

9.1 <u>No Advertisement.</u> Operator shall not, without the Authority's prior written approval, refer to the Authority in any advertising, letterheads, bills, invoices, or other printed matter.

9.2 <u>No Signs or Communication Devices.</u> Operator shall not erect or place signs, posters, stanchions or any other structure or install or have installed any private or public telephone or other communication device at Logan Airport without the Authority's prior written approval. Any structure or device placed at Logan Airport without such approval may be summarily removed by the Authority at Operator's risk and expense.