UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

_____
                                    )
JALBERT LEASING, INC., et al.,      )        CIVIL ACTION
                                    )        NO. 04CV-10486-RCL
            *Plaintiffs*,           )
                                    )
v.                                  )
                                    )
MASSACHUSETTS PORT AUTHORITY,       )
                                    )
            *Defendant*.            )
_____)

**Affidavit of Donald Ross, General Manager**
**Plaintiff Bonanza Acquisitions, LLC**
<u>**In Support of Plaintiffs' Motion for Summary Judgment**</u>

**Introduction**

1.  I am Donald Ross, General Manager of Plaintiff Bonanza Acquisition, LLC ("Bonanza"). Bonanza is a Delaware Limited Liability Company whose principal place of business is One Bonanza Way, Providence, Rhode Island 02904.

2.  As Bonanza's General Manager, my duties and responsibilities include management of Bonanza's business. I am authorized on behalf of Bonanza to submit this affidavit in support of Plaintiffs' Motion for Summary Judgment filed in this matter. The statements herein are based on my personal knowledge, except as I have indicated otherwise.

3.  I have been employed by Bonanza (and its corporate predecessor) in various capacities since April, 1983.  My statements are based on that experience.

**Bonanza**

4.  Bonanza is a regional, interstate bus company, whose primary business is operating scheduled bus service from Boston on the north to New York City on the south, with

service concentrated on Bonanza's home area of Rhode Island.  Bonanza (and its predecessors) have been operating scheduled bus service for many, many decades; Bonanza has been operating scheduled bus service to and from Logan Airport for more than 30 years.

5.      As an interstate bus company, Bonanza's business is regulated by the Federal Motor Carrier Safety Administration ("FMCSA").  Bonanza conducts its scheduled service under a Certificate issued by FMCSA MC-448481.  (Bonanza's predecessor company held Federal certificates dating back many decades.)

6.      As it relates to this case, Bonanza provides scheduled bus service to and from Boston's Logan Airport over two distinct routes.  One route is from Providence, Rhode Island and Foxboro, MA to Logan, and return.  The second is from Woods Hole, Falmouth, and surrounding Massachusetts communities to Logan, and return.

7.      Attached as **Exhibit A** is a copy of Folder 2030 from Bonanza's current schedule, showing 7 daily trips from Woods Hole to Logan and return (the frequency of service is approximately doubled during the summer months).  Attached as **Exhibit B** is a copy of Folder 2025 from Bonanza's current schedule, showing 11 daily trips from Providence to Logan and return. Each schedule is operated by one coach, which picks up or drops off passengers at the various intermediate points along the route.

8.      On each scheduled trip, a Bonanza bus enters the Airport to drop off and pick up passengers at bus stops designated by Massport at each passenger terminal, departing at the time shown on the schedule.

9.      During 2003, Bonanza (and its corporate predecessor) transported 194,579 passengers from Logan over the Woods Hole Route and 92,263 passengers from Logan over the Providence Route for a total of 286,842 passengers.

10. To my best knowledge and based on my experience, during an ordinary month, I believe almost every (and likely every) passenger who rides Bonanza service to/from Logan is either riding to Logan to board a flight to an out-of-state destination or have just deplaned from an airplane arriving at Logan from an out-of-state origin.

11. For many years, Bonanza's operations at Logan have been subject to Bonanza entering into a "Commercial Ground Transportation Operating Agreement ("Agreement") with Massport. To my best knowledge, Bonanza's current such Agreement with Massport is that dated November 8, 1993, which remains in effect through automatic renewal. I have attached a copy of that Agreement as **Exhibit C.**

12. To my best knowledge, Massport will not allow a bus company to provide scheduled bus service to and from Logan unless and until it has entered into a similar agreement to that in Exhibit C.

13. The Agreement contains a number of items which relate to this lawsuit. There are many provisions describing charges assessed by Massport against Bonanza. As examples, ¶4.2 makes reference to "other charges" which Massport imposes in addition to "base rates"; ¶4.3 makes reference to "fees, charges or base rates"; ¶4.4 makes reference to "fees" and "charges"; and ¶4.7 refers to "other charges related to or incidental to the conduct of [Bonanza's] activities at Logan Airport." Also ¶11.3 lists the different types of payments for which Bonanza may be liable as "base rates, fees, charges, interest, costs, assessments, fines, and damages."

14. Under the Agreement, for some time Bonanza has been charged by Massport $1.50 for each scheduled departure. Bonanza now believes this is the type of charge which is prohibited by the §14505 Federal law under which it is suing.

15. Bonanza considers the $1.50 charge to be assessed on passenger transportation,

since it is a separate and distinct charge assessed on each departure where Bonanza is carrying passengers. The charge is assessed by Massport, which appears to be a public entity.

16. Attached as **Exhibit D** is a copy of the January 7, 2004 Massport invoice relating to this charge for December, 2003. The invoice shows that this is a separate billing, with charges assessed on a "per trip" basis. The charge for December was $906.00. This is the only charge shown on the invoice. For 2003, Bonanza paid a total of $10,872 to Massport for this fee.

17. This $1.50 per trip charge by Massport has been in effect for a number of years. In January, 2004, Massport announced it would triple the charge to $4.50 per trip effective April 1, 2004, and increase it again to $7.00 per trip effective April 1, 2005.

18. With this per trip charge to be tripled in a matter of days, Bonanza will be harmed.

19. To the extent Bonanza might try to accept the increased Massport charge without raising passenger fares, this would negatively impact the company. Bonanza deals with high - and in many cases increasing - costs of operating its services. The most current example is the rising costs of fuel. Most all expenses associated with Bonanza's operations are at very high levels or increasing. If Bonanza pays a tripled departure fee without any corresponding increase in revenues, this would negatively impact the company's overall profitability.

20. To the extent Bonanza might try to pass along the fee increase by raising passenger fares, the company would likely lose some passengers and their revenue. In my experience, Bonanza's passengers are very sensitive to price. To my knowledge, almost everyone who uses Bonanza's service to and from Logan has a viable transportation option, whether it is driving themselves or having someone else (a friend or family member) drive them. Another option is one of the many airport shuttle services or alternative services which operate

throughout the region. Bonanza is in competition with many such companies. Based on experience, an increase in passenger fares will likely result in some passengers switching away from Bonanza to some other form of transportation. That would reduce Bonanza's overall revenues, without any reduction in its costs, and the loss of revenue would likely not be offset by to slightly higher fare.

21. If Bonanza loses riders who choose to use private autos instead of our buses, this would serve to frustrate the national goal of promoting intermodal transportation, i.e., bus to air coordinated service. From my company's long participation in industry-wide activities, I am aware of these national goals.

22. I have previously stated the $1.50 per trip charge has been in effect for a number of years, and Bonanza never challenged it in the past. In the past, we were not aware of §14505, and didn't know we had a legal basis to challenge it. Also, with a charge of just $1.50 per departure, it was probably not economically viable to spend money to make such a challenge.

23. In January, 2004, Massport announced it would triple the charge to $4.50 per tip effective April 1, 2004, and then increase it again to $7.00 per trip effective April 1, 2005. At these amounts, Bonanza needs to challenge the fees to protect its well being.

**Verification**

I, Donald Ross, General Manager of Bonanza Acquisition, LLC, verify under penalty of perjury under the laws of the United States of America, that I have read the foregoing statement, that I am qualified and authorized to make that statement, and that all the information therein is true and correct.



"/s/                                    "
Donald Ross, General Manager

Dated:   March 17, 2004