UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

| | | |
|---|---|---|
| JALBERT LEASING, INC. | ) | |
|    d/b/a C&J Trailways | ) | |
| BONANZA ACQUISITION, LLC; | ) | |
| CONCORD COACH LINES, INC. | ) | |
|    d/b/a Concord Trailways | ) | |
| DARTMOUTH TRANSPORTATION | ) | |
|    COMPANY, INC. | ) | |
| d/b/a Dartmouth MiniCoach, | ) | Civil Action No. 04-10486 (RCL) |
| | ) | |
|       Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MASSACHUSETTS PORT AUTHORITY, | ) | |
| | ) | |
|       Defendant. | ) | |

---

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**I.      Introduction**

This is an action in which plaintiffs seek a declaration that a federal statute, enacted for a very specific and limited purpose, prohibits a user fee or charge for access by interstate motor carriers to Logan Airport.  The effect of such an unwarranted declaration by this court would radically alter the relationship between states and interstate motor carriers and would in fact prohibit the imposition on interstate motor carriers of a host of  tolls, fees, excise taxes and user fees commonly charged not only by Massport and the Commonwealth of Massachusetts, but by states and state agencies throughout the nation.

Massport, an instrumentality of the Commonwealth of Massachusetts, is responsible for operating certain public transportation facilities, including Logan Airport.  *See* Mass. Gen. L. ch.

91 App., §§ 1-1 *et seq*.  At issue in this action is Massport's facility use fee, a fee charged by

Massport on a per trip basis in exchange for permitting motor carriers access to, and use of,

Logan Airport; the fee is used to defray the costs of providing the state-funded facilities.[1]

As argued in greater detail below, states have the right to impose charges where Congress

has not explicitly preempted their authority to do so.  49 U.S.C. § 14505, the statute at issue here,

contains no explicit preemption of Massport's authority to charge a facility use fee on interstate

motor carriers.  To the extent that the Court considers the legislative history of 49 U.S.C. §

14505, the legislative history also demonstrates that Congress never intended to preempt states

from charging interstate motor carriers facility use fees.  Moreover, the only other court to

consider this issue held that 49 U.S.C. § 14505 does not preempt such charges.  *See Tri State*

*Coach Lines, Inc.,* v. *Metropolitan Pier & Exposition Auth.,* 732 N.E. 2d 1137, 1146 (Ill. App.

2000).  Because there are no genuine issues of material fact in dispute and Massport is entitled to

judgment as a matter of law, Massport moves for summary judgment pursuant to Federal Rule of

Civil Procedure 56(b) and asks the court to deny plaintiffs' motion for summary judgment.  *See*,

*e.g.*, *Wolinetz* v. *Berkshire Life Ins. Co.*, 361 F.3d 44, 47 (1st Cir. 2004).

## II.    States Are Permitted To Charge Interstate Motor Carriers For The Use Of State-Funded Facilities.

It is well-settled that a state may recover the costs of providing state funded facilities by

imposing fees on commercial operators that use such facilities.  The Supreme Court in

*Evansville-Vanderburgh Airport Auth.* v. *Delta Airlines, Inc.*, 405 U.S. 707 (1972) upheld a

---

[1] *See* Decl. of Leslie Kirwan, ¶¶ 2-5; Plaintiffs concede that the charge at issue is a per trip departure fee.  Plaintiffs explain that "[e]ach Massport invoice by which Plaintiffs are requested to pay clearly shows a 'per departure' charge."  Pl. Mem. at 6 (citing Jalbert Aff. ¶16; Ross Aff. ¶15 and Blunt Aff. ¶16); Pl. Mem. at 7 (referencing the charge as "$1.50 per departure");

$1.00 per passenger charge on passengers enplaning on commercial airlines.[2]  The state fee was levied to help defray the cost of airport construction and maintenance and both interstate and intrastate flights were subject to the same charge.  The Court explained:

> [W]here a state at its own expense furnishes special facilities for the use of those engaged in commerce, interstate as well as domestic, it may exact compensation therefor.  The amount of the charges and the method of collection are primarily for determination by the state itself . . .[3]

*Id.* at 712-713 (quoting *Parkersburg & O. River Transportation Co.* v. *Parkersburg,* 107 U.S. 691, 699 (1883)).  The First Circuit has repeatedly upheld this principle.  *See, e.g.*, *American Airlines, Inc.* v. *Massachusetts Port Authority*, 560 F.2d 1036, 1038 (1st Cir. 1977); *Doran* v. *Massachusetts Turnpike Authority*, 348 U.S. 315, 320 (1st Cir. 2003).

Where states are entitled to legislate, no federal preemption exists unless Congress' intent to preempt state sovereignty is "unmistakably clear in the language of the statute." *Gregory* v. *Ashcroft*, 501 U.S. 452, 460-461 (1991); *Massachusetts Ass'n of Health Maintenance Organizations* v. *Ruthardt*, 194 F.3d 176, 178-179 (1st Cir.1999) ("although the power to preempt is absolute, its exercise is not lightly to be presumed. . . .  Rather, courts 'start with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress.'") (quoting *Rice* v. *Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)) (internal citation omitted); *Talbott* v. *C.R. Bard, Inc.*, 63 F.3d 25, 27 (1st Cir 1995) ("To determine whether federal law preempts state law, we look to

---

[2] Congress subsequently chose to prohibit states from imposing this kind of head tax, *see* 49 U.S.C. § 1513.

[3] Although there are certain standards that apply to these state charges, since this case focuses entirely on a specific statute affecting interstate commerce, 49 U.S.C. § 14505, the balancing applicable in a dormant Commerce Clause analysis is not relevant here.

the intent of Congress: congressional intent to displace state law must be clear and manifest before preemption is found.") (internal quotation and citation omitted).

Despite direct conflict with the plain language of § 14505, plaintiffs ask the court to hold that Congress intended to outlaw, *sub silentio*, the universe of state fees on interstate motor carriers. Plaintiffs' claim is unsupportable and the ramifications of the endorsement of such a position are far-reaching and grave. Under plaintiffs' analysis, the statute would prohibit all tolls, fees and charges imposed by states on interstate motor carriers. Such a ruling is not warranted or supported by plaintiffs' arguments.

## III.    The Plain Language Of 49 U.S.C. § 14505 Does Not Preclude Massport From Imposing Trip Fees On Bus Companies That Use Logan Airport.

49 U.S.C. § 14505 prohibits a State or political subdivision from levying a charge on (1) *a passenger* traveling in interstate commerce; (2) the *transportation of a passenger* traveling in interstate commerce; (3) the *sale of passenger transportation* in interstate commerce; or (4) the *gross receipts* derived from such transportation.[4]  In interpreting statutes, courts first look to the plain language of the provisions. *See*, *e.g., Barnhart* v. *Sigmon Coal Co., Inc*. 534 U.S. 438, 450 (2002) ("As in all statutory construction cases . . . [t]he first step is to determine whether the language at issue has a plain and unambiguous meaning . . . .The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent.) (internal quotation and citation omitted); *United States* v. *Hilario*, 218 F.3d 19, 23 (1st Cir.2000) ("If the

---

[4] The complete text of the statute is as follows:

A State or political subdivision thereof may not collect or levy a tax, fee, head charge, or other charge on--(1) a passenger traveling in interstate commerce by motor carrier;(2) the transportation of a passenger traveling in interstate commerce by motor carrier;(3) the sale of passenger transportation in interstate commerce by motor carrier; or (4) the gross receipts derived from such transportation.

plain language of the statute points unerringly in a single direction, an inquiring court ordinarily should look no further.").

    None of the provisions of § 14505 address the charge at issue here, a trip fee charged to bus companies in exchange for the companies' access to and use of a state facility. Consideration of each of the statutory provisions makes this abundantly clear.[5]  Massport's trip fee is not a charge on (1) "*a passenger* traveling in interstate commerce by motor carrier."  The trip fee is charged to the bus company, not to a passenger or on a per passenger basis.  Neither is the trip fee imposed on (2) "the *transportation of a passenger* traveling in interstate commerce by motor carrier." It is a fee for use of airport facilities and airport access.  Even if the bus departs Logan with no passengers at all, the bus company is obligated to pay the facility use charge.  Massport's fee is also not a tax on (3) "the *sale of passenger transportation* in interstate commerce by motor carrier."  Bus companies must pay the trip fee even if there is no sale of passenger transportation.  Finally, the charge is not a tax on (4) "the *gross receipts* derived from such transportation."  A bus company's gross receipts are irrelevant to Massport's fee.  Bus companies must pay Massport's facility use charge even if the companies earn no gross receipts from transportation whatsoever; likewise, if gross receipts for a particular company soar, the facility use charge is similarly unaffected.  Thus, under the plain language of the statute, Congress in 49 U.S.C. § 14505 did not address and did not intend to prohibit the charge at issue here, a trip fee imposed on motor carriers in exchange for access to and use of Logan Airport.

---

[5]Massport has imposed the facility use fee in exchange for providing motor carriers access to and use of Logan in part to defray costs associated with the Logan facilities. *See* Kirwan Decl., ¶¶ 2-5; *see also* Blunt Aff., Ex. D ("Massport officials said the fee increase for ground transportation will help pay for maintenance of Logan's newly revamped road system.").  The charge at issue in this action is $4.50 per bus trip.

**IV.    In The Alternative, If The Court Considers The Statute Ambiguous, The Legislative History Of § 14505 Makes Clear That Congress Did Not Intend To Preempt State Facility Use Fees.**

As described above, the plain language of the statute defeats plaintiffs' claims.  However, in the alternative, Massport asserts that the language of § 14505 is, at a minimum, ambiguous.[6] Plaintiffs take the position that the statute explicitly covers user fees and Massport's charge is therefore preempted.  Massport disputes this claim.  Massport's trip fee is not addressed explicitly in § 14505, that is, it is not a charge on a passenger traveling in interstate commerce, the transportation of a passenger traveling in interstate commerce, the sale of passenger transportation in interstate commerce, or the gross receipts derived from such transportation, there is no explicit preemption.  These inconsistent and diametrically opposed views support the conclusion that the words of the statute are ambiguous.  In order to resolve this ambiguity, the court should look to the legislative history of the statute.  *See, e.g., United States* v. *Alky Enterprises, Inc.,* 969 F.2d 1309, 1314 (1st Cir.1992) ("where the language of a statute is ambiguous on its face, we should look . . . to the legislative history in order to ascertain Congressional intent").  The clear and unambiguous legislative history of the provision indicates that it was enacted to address a carefully specified and narrow circumstance -- not as a broad prohibition on all state-imposed fees.

_____

[6] The only other court to consider this issue also found the language of the statute ambiguous. The Illinois court in *Tri-State Coach Lines, Inc.*, v. *Metropolitan Pier & Exposition Auth.*, 732 N.E.2d 1137, 1146 (Ill. App. 2000) found § 14505 (2) ambiguous because it determined that "interstate commerce" could reasonably be interpreted as out-of-state air travel followed by in-state ground travel, or alternatively, only ground travel which itself crossed-state lines.  This same issue is present in this suit as certain of plaintiffs' bus trips include trips between Logan Airport and stops within Massachusetts. See, e.g., Blunt Aff., Ex. A (bus schedule showing trips between Logan Airport and Boston, Massachusetts); Ross. Aff., Ex. A (same); Jalbert Aff., Ex. A (bus schedule showing trips between Logan and Newburyport, Massachusetts).

The legislative history demonstrates that 49 U.S.C. § 14505 was intended to respond to a Supreme Court decision, *Oklahoma Tax Commission* v. *Jefferson Lines Inc.*, 514 U.S. 175 (1995), which permitted states to tax *passengers purchasing bus tickets* for interstate travel.  In *Jefferson Lines* the Court reviewed Oklahoma's sales tax on bus tickets for travel from Oklahoma to other states.  Under Oklahoma's statute, Okl. Stat., Tit. 68, § 1354(a)(C)(Supp.1988), the *buyers of the bus tickets* paid the tax, which was then collected by the bus companies, which in turn remitted the money to the state.  The Court upheld Oklahoma's law and ruled that the Commerce Clause, U.S. Const. Art. I, § 8, cl.3, was not violated when Oklahoma taxed the sale of transportation for hire, even though the travel began in Oklahoma but ended in, or traversed through, other states.  In reaction to this ruling, Congress enacted 49 U.S.C. § 14505.  Thus, the Conference Report addressing § 14505 explains,

> This section prohibits a State or political subdivision of a State from levying a tax on *bus tickets* for interstate travel.  This reverses a recent Supreme Court decision permitting States to do so and conforms taxation of *bus tickets* to that of *airline tickets.*

H.R. Rep. No. 104-311, 104th Congress, 1st Sess.,120 (1995) (emphasis added); *see also* H.R. Conf. Rep. No. 104-422, 104th Congress, 1st Sess., 220 (1995) ("This section prohibits a State or political subdivision of a State from levying a tax on bus tickets for interstate travel.  This conforms the treatment of taxation of bus *tickets* to that of airline *tickets.*") (emphasis added); *cf. U.S.* v. *Commonwealth Energy System and Subsidiary Companies*, 235 F.3d 11, 16 (1st Cir. 2000) ("The most dispositive indicator of congressional intent is the conference report").

The Conference Report and Committee Report thus clarify that § 14505 was intended to address the Supreme Court's ruling that a state has a right to tax passengers on the purchase of interstate bus tickets.  Neither the Court's opinion in *Jefferson Lines* nor the congressional

–7–

discussion leading up to Congress' enactment of § 14505 address whether a state, or its political subdivisions, may charge interstate bus companies a facility use tax in exchange for permitting them access to a state funded airport or any other state funded facility.

### V.    Rather Than Supporting Plaintiffs' Position, Statutes Addressing State Taxation Of Air And Train Travel Demonstrate That Congress Did Not Intend To Prohibit State Facility Use Fees.

#### A.    Interstate Air Travel

Plaintiffs claim that because Congress explicitly exempted certain state fees when it prohibited states from taxing interstate air travel, *see* 49 U.S.C. § 40116, but did not explicitly exempt any state charges when it prohibited states from taxing interstate motor carrier transportation, *see* 49 U.S.C. § 14505, Congress intended to preempt all state taxation on interstate motor carriers. *See*, *e.g.,* Pl. Mem. at 11 ("[Section] 14505 expressly prohibits all such fees and charges and allows none."). Plaintiffs attempt to make too much of the Supreme Court's ruling in *Northwest Airlines, Inc.* v. *County of Kent*, 510 U.S. 355, 365 (1994), that the language in the statute addressing air travel, the Anti-Head Tax Act, was "hardly ambiguous" and would have constituted complete preemption of state charges had it not included explicit exemptions to federal preemption. *See*, *e.g.,* Pl. Mem. at 8.

Plaintiffs fail to mention that when Congress initially addressed state taxation of interstate air travel, Congress used language that could have been construed as requiring total preemption. The original provision of the Anti-Head Tax Act stated:

> No State . . . shall levy or collect a tax, fee, head charge, or other charge, *directly or indirectly*, on persons traveling in air commerce or on the carriage of

persons traveling in air commerce or on the sale of air transportation or on the gross receipts derived therefrom.[7]

49 U.S.C. § 1513 (a)(emphasis added).  In order to clarify that, despite the "*directly or indirectly*" language, Congress did not intend to preempt all state charges related to air carriers, Congress added § 1513(b) which states:

> [N]othing in this section shall prohibit a State . . . from the levy or collection of taxes . . . including property taxes, net income taxes, franchise taxes, and sale of goods or services; and nothing in this section shall prohibit a State . . . owning or operating an airport from levying or collecting reasonable rental charges, landing fees, and other service charges from aircraft operators for the use of airport facilities.

Thus § 1513(a) contained language ("directly or indirectly") which could have been construed as mandating total preemption, and Congress added § 1513(b) to make clear that no such universal preemption had been intended.  Only the limited scenarios identified in § 1513(a) were preempted from State taxation.  The Supreme Court in *Northwest Airlines* explicitly addressed the "directly or indirectly" phrase when it held that § 1513 (a) would have broadly preempted state charges, were it not for the exemptions included in § 1513 (b).  The court explained:

---

[7] The full passage, 49 U.S.C. § 1513 (a), states:

No State (or political subdivision thereof, including the Commonwealth of Puerto Rico, the Virgin Islands, Guam, the District of Columbia, the territories or possessions of the United States or political agencies of two or more States) shall levy or collect a tax, fee, head charge, or other charge, directly or indirectly, on persons traveling in air commerce or on the carriage of persons traveling in air commerce or on the sale of air transportation or on the gross receipts derived therefrom; except as provided in subsection (e) of this section and except that any State (or political subdivision thereof, including the Commonwealth of Puerto Rico, the Virgin Islands, Guam, the District of Columbia, the territories or possessions of the United States or political agencies of two or more States) which levied a tax, fee, head charge, or other charge, directly or indirectly, on persons traveling in air commerce or on the carriage of persons traveling in air commerce or on the sale of air transportation or on the gross receipts derived therefrom prior to May 21, 1970, shall be exempt from the provisions of this subsection until December 31, 1973.

> The AHTA prohibits States and their subdivisions from levying a 'fee' or 'other charge' *'directly or indirectly'* on 'persons traveling in air commerce or on the carriage of persons traveling in air commerce.' 49 U.S.C. § 1513(a). Landing fees, terminal charges, and other airport user fees of the sort here challenged fit § 1513(a)'s description.

*Id.* at 365 (emphasis added) (quoting *Aloha Airlines*, 464 U.S. 7, 12-13 (1983)). Section 1513 was subsequently refined and codified as 49 U.S.C. § 40116. At that point Congress dropped the "directly or indirectly" language, but continued to retain the enumerated exemptions. *See* 49 U.S.C. § 40116 (e)(1) & (2).

Unlike the statute addressing state taxation of air travel, 49 U.S.C. § 14505 *never* contained *any* broad preemption language. Thus there was no need for Congress to explicitly disclaim a sweeping intent to preempt indirect State taxation. Indeed, the congressional reports reiterate that § 14505 "conforms the treatment of taxation of bus tickets to that of airline tickets." H.R. Rep. No. 104-311, 104th Congress, 1st Sess.,120 (1995) (emphasis added); *see also* H.R. Conf. Rep. No. 104-422, 104th Congress, 1st Sess., 220 (1995) (same). Just as Congress prohibited state taxation of interstate air travel, but permitted states to charge facility use fees or trip fees on airlines, *see* 49 U.S.C. § 40116, Congress intended § 14505 to do the same: prohibit states from taxing interstate bus tickets, but permit states to charge other fees, including facility use fees, on interstate and intrastate motor carriers. Far from proving that Congress intended total preemption of state charges on interstate motor carriers, as plaintiffs claim, the Anti-Head Tax Act , 49 U.S.C. § 40116,  serves as further proof that Congress, in the statute addressing interstate motor carriers, 49 U.S.C. § 14505, intended to preempt only those areas explicitly described by the plain language of that statute.

–10–

**B.    Amtrak**

Similarly, legislation addressing state taxation of Amtrak provides a striking example of the fact that Congress knows how to broadly preempt states from imposing fees on interstate ground transportation when it intends to do so.  Plaintiffs claim that the statute addressing preemption of state taxation of Amtrak supports their position.[8]  Yet, 49 U.S.C. § 24301(l) provides explicitly that states may not impose charges, "on Amtrak," thereby broadly preempting state authority to legislate, rather than limiting federal preemption to particular areas.  The provision explains,

> Amtrak, a rail carrier subsidiary of Amtrak, and any passenger or other customer of Amtrak or such subsidiary, are exempt from a tax, fee, head charge, or other charge, imposed or levied by a State, political subdivision, or local taxing authority *on Amtrak*. . . .

49 U.S.C. § 24301(l)(emphasis added).  Congress made clear that states may not impose charges "on Amtrak"; the federal preemption was not limited to a particular kind of charge or a particular aspect of Amtrak, but was directed to all potential fees "on Amtrak."  No such language exists regarding state taxation of interstate motor carriers.  In 49 U.S.C. § 14505 Congress could have mandated that, 'A State or political subdivision thereof may not collect or levy a tax, fee, head

---

[8] The full passage cited by plaintiffs states:

(l) Exemption from taxes levied after September 30, 1981.--(1)In general.-- Amtrak, a rail carrier subsidiary of Amtrak, and any passenger or other customer of Amtrak or such subsidiary, are exempt from a tax, fee, head charge, or other charge, imposed or levied by a State, political subdivision, or local taxing authority on Amtrak, a rail carrier subsidiary of Amtrak, or on persons traveling in intercity rail passenger transportation or on mail or express transportation provided by Amtrak or such a subsidiary, or on the carriage of such persons, mail, or express, or on the sale of any such transportation, or on the gross receipts derived therefrom after September 30, 1981.  In the case of a tax or fee that Amtrak was required to pay as of September 10, 1982, Amtrak is not exempt from such tax or fee if it was assessed before April 1, 1997.

charge, or other charge *on interstate motor carriers*,' as it had regarding Amtrak, but Congress did not. Instead of implementing broad preemption of state regulation 'on interstate motor carriers,' Congress chose to preempt only the kinds of state taxation mentioned in § 14505 – direct state taxation of interstate bus tickets.

**VI.    Recognition of Plaintiffs' Strained Statutory Reading Would Radically Alter Current State Regulation.**

Plaintiffs assert that § 14505, in contrast to § 40116, must be read as a broad preemption of states' authority to tax interstate motor carriers. Plaintiffs claim that in contrast to Congress' actions regarding interstate air travel, there are no exemptions to federal preemption of states' authority to tax interstate motor carriers. The scope of this sweeping preemption intrudes into spheres in which it has been long-settled that states are authorized to act. Under plaintiffs' analysis states must be prohibited from charging interstate motor carriers, not only facility use fees, but any kind of charge whatever, including charges relating to traditional state spheres of regulation such as safety and licensure.

For example, like Massport's facility use fee, Massachusetts state highway tolls are imposed on interstate and intrastate motor carriers in exchange for the use of state funded facilities. If, as plaintiffs argue, § 14505 must be read as a broad preemption of all state charges on interstate motor carriers, with no exemptions, Massachusetts may not require interstate motor carriers to pay tolls for the use of its roads. Instead, intrastate transportation would be required to subsidize interstate motor carriers' use of state roads – just as, under plaintiffs' position, intrastate motor carriers would subsidize interstate motor carriers' use of Logan Airport.

Likewise, any Massachusetts gas tax, imposed when consumers buy gasoline for their vehicles, would be prohibited under plaintiffs' reading of § 14505. Massachusetts would be

authorized to tax gasoline purchases for in-state travel, but would not be permitted to tax gasoline purchases for interstate motor carriers. The requirement to distinguish at the gas pump between intrastate motor carriers and interstate motor carriers, and between interstate motor carriers traveling within a state and interstate motor carriers traveling across state lines, would likely be impossible to administer. A similar fate would befall all areas where states currently impose fees on interstate motor carriers.

**VII.    No Court Has Ever Recognized Plaintiffs' Claim.**

Plaintiffs ask this court to determine that Congress intended to preempt the universe of state regulation of motor carriers, but point to no instance that intent was manifest in congressional floor debates, legislative history, or statutory language.[9] No court has recognized this purported universal preemption, nearly a decade after the statute passed. This complete absence of legal authority does not support plaintiffs' repeated assertion that the Supreme Court has ruled on the meaning of § 14505. *See*, *e.g.,* Pl. Mem. at 8 n.5 ("The Supreme Court's finding that § 14505 is clear is due more deference than the finding of ambiguity by the Illinois Court); Pl. Mem. at 16 (The Illinois Court was "[s]eemingly unaware of the U.S. Supreme Court decisions that the language of § 14505 is 'hardly ambiguous'"). Plaintiffs' statements are not correct. The Supreme Court has *never* interpreted § 14505. No court has ever held that § 14505 preempts states from all regulation implicating motor carriers; nor are there legitimate grounds to do so. The Supreme Court case cited by plaintiffs, *Northwest Airlines, Inc.* v. *County of Kent*, 510 U.S. 355, 364 (1994), addressed the Anti-Head Tax Act, not § 14505. The only court, until

---

[9] To the contrary, as discussed in Section IV, the legislative history demonstrated that the scope of § 14505 is far more limited.

now, to consider the argument that Congress in § 14505 preempted all state taxation on interstate motor carriers is an Illinois court that easily disposed of the claim.  In *Tri-State Coach Lines, Inc.* v. *Metropolitan Pier and Exposition Authority*, 732 N.E.2d 1137 (Ill. App. 2000), the court explained that Congress passed § 14505 to overrule *Jefferson Lines* and never intended to address per trip departure fees:

> [I]n enacting section 14505 to countermand the Supreme Court's decision in *Jefferson Lines*, Congress removed the danger that the state in which a cross-country bus trip originated and where the tickets were purchased could disproportionately burden interstate commerce by imposing a sales tax on the entire ticket price, despite the fact that the interstate bus trip had only relatively minor or brief contact with the taxing state.

*Id*. at 1149.  The court reviewed Illinois's airport trip tax and found that § 14505, a statute passed to address taxation of interstate bus tickets, did not apply.

> The language of section 14505(2), prohibiting state taxation of 'the *transportation* of passengers traveling in interstate commerce by motor carrier' is inapplicable to the airport departure tax, which is imposed not on the *transportation* of passengers in interstate commerce but upon the *departures* of commercial vehicles from O'Hare and Midway. In other words, the 'taxable' event to which the airport departure tax attaches is not the interstate transportation of passengers but, rather, the ground transportation of departures from the airports. This construction is compelled when one considers the absence of any 'unmistakably clear' expression of congressional intent to preempt the imposition of a state or local tax on commercial motor carrier departures from an airport.

*Id.* at 1149-1150 (emphasis in original).  This same analysis applies with equal force to Massport's trip fee.  The plain language of § 14505 makes clear what the legislative history of § 14505 confirms: Congress did not preempt a state's authority to impose facility use fees on interstate motor carriers.

**VIII.    Conclusion**

For the reasons stated above, the Court should grant Massport's Cross-Motion for

Summary Judgment and deny Plaintiffs' Motion for Summary Judgment.


Respectfully submitted,




/s/Rocoe Trimmier, Jr.

Roscoe Trimmier, Jr. (BBO#502560)
Richard J. Lettieri (BBO#295240)
ROPES & GRAY LLP
One International Place
Boston, MA  02110
(617) 951-7000



David S. Mackey (BBO#542277)
Shelly L. Taylor (BBO#563506)
MASSACHUSETTS PORT AUTHORITY
1 Harborside Drive
East Boston, MA  02128




Dated: April 30, 2004

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 30, 2004, I served a copy of the foregoing pleading upon all parties hereto by hand, electronically or by mailing copies thereof via first class mail, properly addressed, to the following:

Wesley S. Chused
LOONEY & GROSSMAN LLP
101 Arch Street
Boston, MA  02110


Jeremy Kahn
KAHN & KAHN
1730 Rhode Island Avenue, N.W.
Washington, D.C.  20026


/s/ Rocoe Trimmier, Jr.

Roscoe Trimmier, Jr. (BBO#502560)