UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JALBERT LEASING, INC., *et al.* | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 04-10486-MLW |
| MASSACHUSETTS PORT AUTHORITY, | ) ) ) | |
| Defendant | ) ) ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
CROSS MOTION FOR SUMMARY JUDGMENT**

The issues are joined. No facts are in dispute. Each side has submitted its own summary judgment motion backed by its own interpretation of the law. The federal statute which underlies the case clearly applies. The single issue to be resolved is whether 49 U.S.C. §14505 bars Massport from assessing its departure charges on plaintiff bus companies at Logan Airport as an impermissible "tax, fee, . . . , or other charge" on their interstate passenger bus transportation.

In their Initial Memorandum ("Init. Mem.") supporting their summary judgment motion, plaintiffs argued why their interpretation is the correct one. In large part, they anticipated and addressed much of Massport's argument; in general, they rely on their initial argument as to §14505's meaning and application, without repeating it here.

Yet, in one small sense, the issues are not joined. Plaintiffs argue §14505 by its terms bars Massport from imposing its fee. Massport, starting with the second sentence of its argument, focuses not so much on the terms of the statute - which terms support plaintiffs' view - but rather why it asserts the Congressional policy embraced in §14505 is - in its judgment - a misguided one and then goes on to speculate as to all the evils which will likely befall society if §14505 is enforced against it. ("Under plaintiffs' analysis, the statute would prohibit all tolls, fees, and charges imposed by states on interstate motor carriers." Massport Memo., p. 4). Plaintiffs don't agree Massport's Armageddon "public policy" concerns are either realistic or supportable, *infra*. The Court should apply the terms of §14505 to the case at hand in the context of the statutory scheme, not entertain a Massport debate about public policy. Plaintiffs focus on what the statute says; plaintiffs oppose Massport's summary judgment motion, because Massport would have the Court ignore the statute's terms.

<u>By Its Terms, §14505 Bars the Imposition of Massport's Fees</u>

By its terms, §14505 bars the collection or levy of "a tax, fee, head charge, or other charge" on specified passengers and/or passenger transportation, language which is at the same time both clear and broad. The departure fee Massport imposes on plaintiffs falls within this list of prohibited practices. *See,* Init.Mem., pp. 6-7. The crux of the dispute is whether the statute is to be interpreted literally - as plaintiffs argue - or if it is to

be interpreted to further some particular public policy of expanding state taxing opportunities at the cost of burdening interstate transportation - as Massport argues.

Both sides have briefed their view how §14505 should be interpreted; for the most part, plaintiffs rely on their initial analysis. Congress enacted §14505 after years of experience with and Court interpretations of similar language as it applied to air carriers and with experience and Court interpretations of federal preemption in the motor carrier field. [1]

Plaintiffs agree with Massport's citation to the statutory interpretation rules in *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450, (2002) that first one must "determine whether the language at issue has a plain and unambiguous meaning," but plaintiffs disagree with Massport's complete failure to consider that case's direction to see whether "the statutory scheme is coherent and consistent." *Id*. Interpretation of a statute requires the words of the statute to be read in their context, taking note of their place in the overall statutory scheme. *Food and Drug Administration v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). [2]

Plaintiffs in their argument address at great length the place of §14505 in Chapter 145 of the Interstate Commerce Act, but Massport ignores context altogether. Not only does Massport fail even to refer to any other statute in Chapter 145, even further it fails to

---

[1] Congress was also aware of cases like *Salem Transportation*, cited in Init.Mem., p. 11, which addressed precisely the issue raised here from a slightly different perspective. Massport never addressed *Salem*.

[2] In interpreting the statute at issue, "[w]e consider not only the bare meaning" of the critical word or phrase "but also its placement and purpose in the statutory scheme." *Holloway v. U.S.*, 526 U.S. 1, 6, (1999), citing *Bailey v. United States*, 516 U.S. 137, 145 (1995).

refer to any other portion of the Interstate Commerce Act! Beginning at page 12 of their Init.Mem., plaintiffs addressed the many court decisions recognizing and upholding the significant federal preemption embodied in Chapter 145 of the Interstate Commerce Act, of which §14505 is an integral part.

Massport at Part V of its argument addresses air travel laws and Amtrak laws, but it altogether ignores the statutory scheme of Chapter 145 which relates to bus transportation, which is characterized by federal preemption of state actions which Congress has found may impose impermissible burdens on interstate motor carrier transportation.[3] As the operator of Logan Airport, it is not surprising that Massport chooses to argue on the basis of laws applying to air travel, but it is significant that it simply avoids altogether any treatment of the federal preemptive laws relating to motor carriers, all a part of the statutory scheme including §14505.[4] Massport's argument thus fails to adhere to the *Barnhart* rule of statutory interpretation which it advances. To look at the entire statutory scheme is to see plaintiffs' interpretation is the correct one.

While the Issue Raised Here May Not Have Been Treated
Elsewhere By Another Court,
<u>That Has No Bearing on the Validity of Plaintiffs' Claim</u>

---

[3] Plaintiffs initially referred to the air and Amtrak statutes, but for purposes of suggesting the source of the language in §14505 and how Congress in enacting §14505 relied on existing statutory language already interpreted by the Courts. Since §14505 preempts state action, which Congress admittedly only does with care, plaintiffs relied on the many interpretations of Chapter 145 as a strong statement of Congressional intent in the motor carrier field to preempt state imposition of the fees at issue here.

[4] It is also fair to point out that looking at the Interstate Commerce Act would have completely undermined Part VI of Massport's argument. *See* text at pages 6-7, *infra*.

In its argument at Part VII, Massport tries to make much of the argument that "no court has ever recognized plaintiffs' claim," but even if true, so what? Plaintiffs said initially, "Plaintiffs are aware of only one reported legal action seeking to interpret or apply §14505 since it was first enacted in 1995, a lone state court decision, *Tri-State Coach Lines v. MPEA*." (Init. Mem., p.4) Massport has identified no others, so while it is true no court has ruled in plaintiffs' favor, only one has ruled otherwise - and that ruling is suspect.

Assuming only for argument *Tri-State* has any merit, it is at best a decision from a state court in the 7th Circuit. Even as to decisions of other Federal Circuit Courts, "the decision of another circuit is not controlling here [in the 1st Circuit]." *U.S. v. Mitchell*, 432 F.2d 354, 356 (1st Cir. 1970).

As plaintiffs argued, one glaring deficiency is *Tri-State* relied solely on state court decisions applying state law to interpret a federal statute preempting certain state powers directly affecting interstate commerce, but federal statutes need to be interpreted following federal - not state - law, regardless of which court is doing the interpreting. [5] *Webster Bank v. Oakley*, 830 A.2d 139, 150 (Conn. 2003) (under principles of comity

---

[5] One illustration of the weakness of *Tri-State*'s reasoning is reflected at page 6, note 6 of Massport's argument where it cites *Tri-State* for the idea there is confusion whether motor transportation of passengers between an airport and a place in the same state is "interstate" or "intrastate." The *Tri-State* court may have been confused, but federal courts are not. Indeed, the leading case for transportation in a single state being "interstate" is *U.S. v. Yellow Cab Co.*, 332 U.S. 218 (1947), which originated in Chicago. More recent decisions are those such as *Southerland v. St. Croix Taxicab Ass'n.*, 315 F.2d 364 (3rd Cir. 1963) and *Pennsylvania PUC v. ICC*, 812 F.2d 8 (D.C.Cir. 1987) The *Tri-State* court may have been confused, but federal court after federal court confronted with the issue in the context of a well establish regulatory scheme has not been confused. Indeed, the "hot" issue in this area of the law involves the application of the "incidental to air" exemption in 49 U.S.C. §13506(a)(8)(A) to such transportation, in which federal economic and safety regulation are at stake. Once more, had Massport

and consistency, federal rules of statutory construction would be applied to federal statute in state court even though significantly different from state rules of statutory construction). *Omnibus Int'l, Inc. v. AT&T, Inc.*, 111 S.W.3d 818, 821-22 (Tex. App.--Dallas 2003) (state courts should apply federal rules of statutory construction to federal statutes based on considerations of comity and consistency.) *Tri-State* never even acknowledged the many federal (including Supreme Court) decisions both as to the language of §14505 and more broadly as to statutory construction of federal statutes.

With *Tri-State* of such little value, it is more appropriate to restate Massport's argument in Part VII in the same way plaintiffs characterized this case in their initial filing, namely, "there are no court decisions interpreting §14505." This does mean the Court must make new law, but the lack of other court decisions interpreting this precise statute should not otherwise affect the Court's decision.

Plaintiffs' Interpretation Would Not "Radically Alter" State Regulation

Massport would have the Court believe a ruling in plaintiffs' favor would be the precipitous first step along a slippery slope leading quickly to bankruptcy for the Commonwealth due to its inability to tax interstate bus companies or even all motor carriers. Massport Memo., p.13. ("Under plaintiffs' analysis states must be prohibited from charging interstate motor carriers, not only facility use fees, but any kind of charge whatever, including charges relating to traditional state spheres of regulation such as

---

examined the entire regulatory scheme in the Interstate Commerce Act, it would not have made such an argument.

safety and licensure." Massport Memo., p. 12)   Massport doth protest too much.  Its assertion is one further example of Massport's error in ignoring the comprehensive statutory scheme of which §14505 is a part.  In §14501(a)(2), which provides for federal preemption of bus economic licensing, [6] the statute expressly reserves for the states full jurisdiction over safety, highway controls, insurance, etc., which strongly suggests Congress has already considered Massport's concerns and already legislated the outer limits to which federal preemption would extend.

One important issue running through the history of federal motor carrier regulation is the imposition of state taxes on interstate motor carriers.  Congress has been aware of the issue since motor carriers were brought under federal regulation in 1936.  There is a well established body of case law and statutes which define how states can tax interstate carriers  and when they can't.  Indeed, the same chapter 145 in which §14505 appears, includes 49 U.S.C. §14502 which addresses state taxes on the property of interstate motor carriers; 49 U.S.C. §14503 which addresses withholding state income tax for drivers for interstate carriers; and 49 U.S.C. §14504 which addresses the parameters of the state registration system for interstate motor carriers.  These statutes further support the argument that §14505 should be viewed in the context of the entire statutory scheme.

There are a vast number of court decisions interpreting the conditions and terms under which states may impose taxes on interstate carriers for the use of highways; they are not at issue here.  The general rule for determining whether such taxation is an

---

[6] The "traditional state sphere of  . . . licensure" had been preempted beginning with the Bus Regulatory Reform Act of 1982; Massport is too late on raising that concern.

impermissible burden on interstate commerce is set out in *Complete Auto Transit v. Brady*, 430 U.S. 274 (1977); a later case dealing with the topic is *American Trucking Associations v. Scheiner*, 483 U.S. 266 (1987).  In that area of the law, states are not precluded from taxing interstate carriers for using the highways, so long as they don't unduly discriminate against interstate commerce.  This well established body of law is by no stretch of the imagination affected by plaintiffs' claim.  The departure fee imposed by Massport is not a "toll" assessed against every vehicle traversing Logan's roads, but rather an explicit fee on bus passenger transportation, which is a fee Congress has decided imposes an undue burden on interstate commerce.  The well established distinction between permissible charges on commercial and other vehicles for the use of roadways and impermissible taxes or charges on interstate bus transportation will not be altered by a ruling in plaintiffs' favor.  All that will be affected by such a ruling is Massport's ability to raise additional tax revenue by imposing a fee on the interstate bus carriers, in a manner which Congress has decided unduly interferes with the national transportation scheme.

     Contrary to Massport's impassioned plea, as shown by the cases and statutes cited above, "A similar fate would *not* befall all areas where states currently impose fees on interstate motor carriers."  Rather, eliminating Massport's fees on interstate bus transportation would further the Congressional goal expressed in the National Transportation Policy of promoting intermodal transportation, 49 U.S.C.

8

§13101(a)(2)(K), by eliminating undue state taxation of interstate bus transportation from airports.

## Conclusion

Congress, as a part of its comprehensive regulatory scheme for interstate motor carriers, enacted §14505 using language and following interpretations well known to it. That statute by its very terms prohibits Massport's charges assessed against plaintiff bus companies. Plaintiffs have set forth their rationale as to why Massport's charges are prohibited by the statute. Massport has sought to ignore the comprehensive statutory scheme and instead create the spectre of the erosion of state-federal relations in the transportation sector as we know them. Plaintiffs have accurately interpreted §14505 within the statutory scheme. The Court should rule favorably on their summary judgment motion and deny the corresponding motion by Massport.

WHEREFORE, plaintiffs pray that the Court enter summary judgment for plaintiffs and against defendant, as requested herein.

By their attorneys,

May 19, 2004

/s/ Wesley S. Chused
Wesley S. Chused (BBO #083520)
LOONEY & GROSSMAN LLP
101 Arch Street
Boston, MA 02110
(617) 951-2800

and

>Jeremy Kahn
>KAHN & KAHN
>1730 Rhode Island Ave., N.W.
>Suite 810
>Washington, D.C.  20036
>(202) 887-0037

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2004, I served a copy of the foregoing pleading upon all parties hereto by hand, electronically, or by mailing copies thereof via first class mail, postage prepaid, properly addressed to the following:

>Roscoe Trimmier, Jr., Esq.
>Richard J. Lettieri, Esq.
>Ropes & Gray LLP
>One International Place
>Boston, MA  02110

>/s/ Wesley S. Chused
>Wesley S. Chused