UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JALBERT LEASING, INC.,
d/b/a C & J Trailways,
BONANZA ACQUISITION, LLC,
CONCORD COACH LINES, INC.,
d/b/a Concord Trailways, and
DARTMOUTH TRANSPORTATION COMPANY,
INC., d/b/a Dartmouth Coach,
    Plaintiffs,


    v.                               CIVIL ACTION NO.
                                    04-10486-MBB

MASSACHUSETTS PORT AUTHORITY,
    Defendant.

**MEMORANDUM AND ORDER RE:
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
(DOCKET ENTRY # 10); DEFENDANT'S CROSS-
MOTION FOR SUMMARY JUDGMENT
(DOCKET ENTRY # 15)**

**May 18, 2005**

**BOWLER, U.S.M.J.**

    Pending before this court are cross motions for summary

judgment filed by plaintiffs Jalbert Leasing, Inc., d/b/a C & J

Trailways ("Jalbert"), Bonanza Acquisition, LLC ("Bonanza"),

Concord Coach Lines, Inc., d/b/a Concord Trailways ("Concord"),

and Dartmouth Transportation Company, Inc., d/b/a Dartmouth Coach

("Dartmouth") (collectively:  "plaintiffs") (Docket Entry # 10)

and defendant Massachusetts Port Authority ("Massport" or

"defendant") (Docket Entry # 15).

    The legal issue presented is one of first impression in this

circuit and, indeed, in the federal courts.[1]  Massport imposes a

tax upon each plaintiff based upon the number of trips each

entity makes to Boston-Logan International Airport ("Logan").

Plaintiffs contend that the state imposed tax is preempted by

section 14505 of the Interstate Commerce Commission Termination

Act of 1995 ("ICCTA"), 49 U.S.C. § 14505 ("section 14505").

Section 14505 prescribes states or political subdivisions such as

Massport[2] from collecting "a tax, fee, head charge, or other

charge" on "a passenger," "the transportation of a passenger" or

"the sale of passenger transportation in interstate commerce by

motor carrier."[3]  49 U.S.C. § 14505.  After hearing oral

argument,[4] this court took the motions (Docket Entry ## 10 & 15)

under advisement.

---

[1]  There is one state court decision addressing the issue. Tri-State Coach Lines, Inc. v. Metropolitan Pier and Exposition Authority, 732 N.E.2d 1137 (Ill.App. 2000).

[2]  Undeniably, Massport is "a public instrumentality of the Commonwealth of Massachusetts," New England Legal Foundation v. Massport, 883 F.2d 157, 159 (1st Cir. 1989), and, as such, is a "A State or political subdivision thereof" within the meaning of section 14505.  See Mass. Gen. L. ch. 91 App. §§ 1-1 et seq.

[3]  Plaintiffs concede that the fee does not fall within the reach of the statute's fourth category, to wit, a tax on "the gross receipts" derived from such transportation.  (Docket Entry # 11, n.2).

[4]  The length of time between hearing argument and rendering this decision reflects the fact that this court has, admittedly, struggled with the issue and afforded it a great deal of time and reflection in relation to other cases on its docket.

BACKGROUND[5]

The facts are relatively straight forward.  Plaintiffs are
interstate bus companies that transport passengers to and from
Logan on a regular basis.[6]  Plaintiffs also transport passengers
to and from Logan to intrastate destinations inside the
Commonwealth.

As a prerequisite for conducting the scheduled bus services
to and from Logan, each bus company entered into a standard
Commercial Ground Transportation Service Operating Agreement with
Massport.[7]  The agreements require each company to provide
Massport with current fares and routes as well as monthly
ridership reports.[8]  The agreements further allow each company to
drop off and pick up "passengers, packages, goods, luggage or
similar items" at certain areas designated by Massport at Logan's

---

[5]  The factual record before this court is not lengthy and
citations to the record are therefore primarily provided only for
direct quotes.

[6]  Congress abolished the Interstate Commerce Commission
("ICC") in 1995.  Yellow Transportation, Inc. v. Michigan, 537
U.S. 36, 40 n.1 (2002); ICC Termination Act, 109 Stat. 803
(1995).  Thereafter, Congress transferred the authority to
regulate motor carriers such as plaintiffs "to the Department of
Transportation and its agency, the Federal Motor Carriers Safety
Administration."  Republic Western Insurance Company v. Rockmore,
2005 WL 57284 at * 4 (N.D.Tex. Jan. 10, 2005); 49 U.S.C. §§ 13501
et seq.

[7]  On the agreements, Jalbert and Concord identify
themselves as "charter motor bus" carriers and Bonanza identifies
itself as a "scheduled motor bus" carrier.

[8]  The monthly ridership reports detail the number of
passengers carried per route.

passenger terminals.  (Docket Entry ## 12-14,  Ex. B, §§ 3.2).
In excess of 98% of the passengers riding plaintiffs' coaches are
either riding to Logan to board an airplane or departing from
Logan after deplaning.

More importantly, each agreement imposes a monthly user fee
or tax based upon the number of trips each entity makes.[9]  In
particular, the agreements impose a "Base Rate[] Per Trip" upon
each bus company and calculate the fee by multiplying the base
rate times the number of actual trips during the month.  (Docket
Entry ## 12-14,  Ex. B, §§ 1.3 & Ex. B).  Invoices reflect the
"per Trip" charge calculated by multiplying the "Total number of
trips."  (Docket Entry # 12, Ex. D; Docket Entry ## 13 & 14, Ex.
C).  Plaintiffs admit that Massport assesses the fee "on a per
trip basis" or, stated otherwise, "on each departure."  (Docket
Entry # 12, ¶¶ 16 & 17; Docket Entry # 13, ¶¶ 16 & 17; Docket
Entry # 14, ¶¶ 15 & 16).

Massport does not calculate the fee based upon the number of
passengers riding a bus on each trip, the number of bus tickets
sold to passengers or the amount of gross receipts received by
the bus companies per trip.  Nor does Massport impose the fee
directly upon the passengers themselves even though the bus

---

[9]  Additional charges include an annual renewal fee, an
initial application fee and any interest on overdue amounts.
Plaintiffs limit their challenge to the per trip charges which
Massport announced would increase to $4.50 per trip effective
April 2004 and $7.00 or $7.50 per trip effective April 2005.

4

companies may well decide to pass along the increase to the passengers by increasing ticket prices. In the event the bus companies decided to increase the ticket prices because of the increase in the per trip fee or base rate, the passengers would thereby feel the effects, indirectly, of the fee increase.[10]

Massport imposes the fee in return for allowing the bus companies to conduct the chartered or scheduled motor carrier services at Logan. (Docket Entry ## 12-14, Ex. B, pp. 1, ¶¶ 4). Put another way, Massport imposes the fee in return for allowing the bus companies to "use of the facilities at Logan." (Docket Entry ## 12-14, Ex. B, §§ 4.1). The purpose of the fee is to defray administrative, maintenance, construction and capital costs associated with the facilities at Logan and offset the cost of paying "to buy Big Dig land near Logan's tunnel entrances." (Docket Entry # 12, Ex. D; Docket Entry # 16, ¶ 5).

For a number of years, Massport imposed the charge of "$1.50 per trip." (Docket Entry # 12, ¶ 18; Docket Entry # 13, ¶ 18; Docket Entry # 14, ¶ 17). Given the relatively low amount, it was not economically viable to challenge the fee in court. (Docket Entry # 12, ¶ 23; Docket Entry # 13, ¶ 24; Docket Entry # 14, ¶ 22). In January 2004, however, Massport announced an

---

[10] Although not outcome determinative to this opinion, higher fares are not inevitable. Indeed, Concord's Vice President notes that "the higher costs could lead *either* to fewer buses going to Logan or higher fares for passengers." (Docket Entry # 12, Ex. D; emphasis added).

increase in the per trip fee from $1.50 to $4.50, effective April 2004, and from $4.50 to $7.00 and/or $7.50, effective April 2005. (Docket Entry # 12, ¶ 18; Docket Entry # 13, ¶ 18; Docket Entry # 14, ¶ 17).  Massport did, in fact, raise the per trip fee for buses to $4.50 "[e]ffective April 4, 2004."  (Docket Entry # 16, ¶ 4).  The present suit, filed in March 2004, followed shortly after the announced increase.


## DISCUSSION

The Supremacy Clause of Article VI of the Constitution gives Congress the authority to preempt state law.  Louisiana Public Service Commission v. FCC, 476 U.S. 355, 368 (1986).  Preemption may be express or implied.  Equal Employment Opportunity Commission v. Commonwealth of Massachusetts, 987 F.2d 64, 67 (1st Cir. 1993); accord Massachusetts Association of Health Maintenance v. Ruthardt, 194 F.3d 176, 179 (1st Cir. 1999).  In any preemption analysis, however, "'the question of whether federal law preempts a state statute is one of congressional intent.'"  Greenwood Trust Company v. Commonwealth of Massachusetts, 971 F.2d 818, 823 (1st Cir. 1992) (citation omitted); accord Massachusetts Association of Health Maintenance v. Ruthardt, 194 F.3d at 179 ("congressional intent stands at the base of all preemption analysis"); Grunbeck v. Dime Savings Bank of New York, FSB, 74 F.3d 331, 336 (1st Cir. 1996) (quoting Greenwood).

Express preemption occurs "when a federal statute explicitly confirms Congress's intention to preempt state law and defines the extent of that preclusion." Grant's Dairy-Maine, LLC v. Commissioner of Maine Department of Agriculture, Food & Rural Resources, 232 F.3d 8, 15 (1st Cir. 2000). The federal statute in the case at bar, 49 U.S.C. § 14505, undeniably falls into the express preemption category. See, e.g., Aloha Airlines, Inc. v. Director of Taxation of Hawaii, 464 U.S. 7, 12 n.5 (1983) (applying express preemption rules to 49 U.S.C. § 1513(a), a statute phrased similarly to section 14505).[11] Although the analysis of express and implied preemption may overlap, the "main reason" for the distinction is that where, as here, "a statute contains an express preemption clause, judicial inquiry almost always begins and ends with the text of that provision." Massachusetts Association of Health Maintenance v. Ruthardt, 194 F.3d at 179 n.1.

The difficulty inherent in analyzing an express preemption clause is determining the scope or reach of the express language. Two presumptions override this process. First, there is "the assumption that preemption will not lie absent evidence of a clear and manifest congressional purpose." Massachusetts

---

[11]  The phraseology between section 1513 and section 14505, however, differs in one significant respect. As discussed infra, the former prohibits levies "directly or indirectly" upon persons traveling on airlines whereas the latter omits the direct and indirect language and simply prohibits levies upon persons traveling on motor carriages.

Association of Health Maintenance v. Ruthardt, 194 F.3d at 179; accord Greenwood Trust Company v. Commonwealth of Massachusetts, 971 F.2d at 823 (there is an assumption that "Congress does not exercise lightly" its preemptive power "to displace a sovereign state's law").  Second, although the language of the statute anchors the express preemption analysis, "congressional intent is not to be derived solely from that language but from context as well."  Massachusetts Association of Health Maintenance v. Ruthardt, 194 F.3d at 179-180 (citing examples of "context" as "'the structure and purpose of the statute as a whole'" and the statute's "'language against the background of its legislative history and historical context'"); see United Parcel Service v. Flores-Galarza, 318 F.3d 323, 334 (1st Cir. 2003) (in determining scope of express preemption provision, "we look to Congress's intent, which is revealed in the language of the provision, as well as the structure and purpose of the statute").  As discussed below, the legislative history of section 14505 confirms what the language expressly prohibits, to wit, a fee imposed on the passenger himself, on the transportation of that passenger (such as a tax based on the numbers of passengers transported), on the sale of the bus ticket to that passenger or on the gross receipts derived therefrom.

Because the analysis of the scope of a preemption statute "begin[s] with its text," Medtronic, Inc. v. Lohr, 518 U.S. 470, 484 (1996), this court turns to the language of the statute.

Section 14505 reads as follows:

> A State or political subdivision thereof may not collect or
> levy a tax, fee, head charge, or other charge on--
>         (1) a passenger traveling in interstate commerce by
> motor carrier;
>         (2) the transportation of a passenger traveling in
> interstate commerce by motor carrier;
>         (3) the sale of passenger transportation in interstate
> commerce by motor carrier; or
>         (4) the gross receipts derived from such
> transportation.

49 U.S.C. § 14505.

The plain meaning of the language of section 14505
evidences a Congressional focus upon taxes lodged directly
against passengers.  See generally Telematics International, Inc.
v. NEMLC Leasing Corporation, 967 F.2d 703, 706 (1st Cir. 1992)
("task of interpretation begins with the text of the statute
itself, and statutory language must be accorded its ordinary
meaning").  Each of the four subsections concerns "a passenger"
or "passenger transportation."  Although the ICCTA defines
"transportation" as including transportation by motor vehicle "of
passengers or property," 49 U.S.C. § 13102(19), section 14505
expressly limits transportation to passenger transportation.
Similarly, within the same chapter, the ICCTA distinguishes
between the preemptive reach of state laws and regulations
affecting motor carriers of passengers and those affecting motor
carriers of property.  See 49 U.S.C. §§ 14501(a) & 14501(c).  A
separate statute in the chapter governs taxation of motor
carriers transporting property and, in general, prohibits

9

discriminatory state property tax assessments.  See 49 U.S.C. §
14502.

Massport's fee is not a tax upon "a passenger" within the
meaning of section 14505(1).  The passenger does not pay the tax.
The bus company pays the fee.

Nor is the fee a tax upon "the transportation of a
passenger" within the meaning of section 14505(2).  The term
"passenger" modifies or otherwise limits the term
"transportation" in the remaining subsections.  By its terms,
therefore, the statute's language does not reach the
transportation of packages or goods which, in addition to
passengers, the commercial ground Transportation Service
Operating Agreements encompass.  (Docket Entry ## 12-14, Ex. B,
§§ 3.2).  The plain meaning of the language also fails to
encompass a trip where no passengers are being transported.
Rather, the statute prohibits a state tax upon "the
transportation of a passenger."[12]  49 U.S.C. § 14505(2).
Although the language, construed broadly, could reach all motor
carriers that at times carry passengers and at other times do
not, such a global construction contravenes the Congressional
purpose of the statute which, as explained infra, was limited to
overturning a Supreme Court decision allowing a state tax upon

_____

[12]  The statute therefore restricts the broader definition
of "transportation" which extends to property and services such
as the handling of property applicable to the ICCTA.  See 49
U.S.C. § 13102(19).

10

passenger bus tickets.  See Medtronic, Inc. v. Lohr, 518 U.S. at
485 ("'[t]he purpose of Congress is the ultimate touchstone' in
every preemption case").  Mindful of this purpose, Congress
intended "the transportation of a passenger" language to reach a
tax that calculates a state fee based upon the number of
passengers being transported but did not intend to reach a tax
that calculates the state fee based upon an actual trip that
could or could not include passengers.

The ordinary meaning of the language in the third category
likewise fails to reach the fees at issue in this case.  "[T]he
sale of passenger transportation," 49 U.S.C. § 14505(3) (emphasis
added), is done through tickets.  The language reaches tickets,
not taxes imposed on the motor carrier in return for the use of
Logan.  Nor is section 14505(3) duplicative of section 14505(1)
inasmuch as it would additionally encompass a tax imposed
directly upon the motor carrier, as opposed to directly upon the
passenger, based upon the number of tickets sold.  This
construction of section 14505(3) is likewise not duplicative of
section 14505(4) which would further extend to reach a state tax
upon the amount of gross receipts derived from passenger tickets.

The term "passenger" and its significance in the statute
should not be under emphasized.  Under Massport's tax, however,
the bus companies remain liable for the departure or user fee
even if the bus is empty of passengers.  The fee is also not

calculated according to the number of passengers.  Given the plain meaning of the language of section 14505, Congress did not intend to preempt state fees lodged upon motor carriers that were not calculated or based upon the transportation of passengers and that were imposed in exchange for the motor carrier's use and access to a state facility such as Logan.

As the First Circuit did in Ruthardt, this court turns to the legislative history to confirm the foregoing plain meaning of the language.  See Massachusetts Association of Health Maintenance v. Ruthardt, 194 F.3d at 184 (noting that "we sometimes have looked to legislative history to confirm textual limitations").  The Congressional purpose of the statute, which the Medtronic Court instructs is the "ultimate touchstone" of preemption analysis, is clearly stated in the admittedly brief legislative history.  That purpose evidences a repeated desire to overturn the Oklahoma Tax Commission v. Jefferson Lines, Inc., 514 U.S. 175 (1995), decision.  The Jefferson Lines decision allowed a state tax levied directly upon the bus ticket paid for by the passengers.  The legislative history therefore teaches that state taxes that do not tax passenger bus tickets and, instead, impose user fees in return for the use of a state facility or a state roadway that are not calculated in reference to passenger[s] do not fall within the scope of the statute.

The conference report, which is the "most dispositive indicator of congressional intent," United States v. Commonwealth

12

Energy System and Subsidiary Companies, 235 F.3d 11, 16 (1st Cir. 2000), states that the conference committee adopts the House Bill which it describes succinctly as follows:

> Sec. 14505. State tax. This section prohibits a State or political subdivision of a State from levying a tax on bus tickets for interstate travel. This reverses a recent Supreme Court decision permitting States to do so and conforms taxation of bus tickets to that of airline tickets.

H.R.Conf.Rep. No. 104-422, at 220 (1995). The House Report itself notes that the statute "prohibits a State or political subdivision of a State from levying a tax on bus tickets for interstate travel" and further explains that, "This conforms the treatment of taxation of bus tickets to that of airline tickets." H.R.Rep. No. 104-311, at 85 (1995). Elsewhere in the course of summarizing the import of the legislation as a whole, the House Report states, inter alia, "that State taxation of interstate bus tickets is prohibited." H.R.Rep. No. 104-311, at 85 (1995). The Senate Report describes the statute as:

> a new provision that would prohibit State and local governments from imposing a tax on the sale of intercity bus tickets. This provision is intended to override a recent court decision permitting such a tax.

S.Rep. No. 104-176, at 48 (1995).

The referenced Supreme Court decision is the Jefferson Lines case. Tri-State Coach Lines, Inc. v. Metropolitan Pier and Exposition Authority, 732 N.E.2d 1137, 1146-1147 (Ill.App. 2000) (discussing Jefferson Lines at length in the context of the legislative history of section 14505). The state tax upheld in

<u>Jefferson Lines</u> allowed Oklahoma to tax the full price of a
passenger ticket for bus travel from Oklahoma to another state.
<u>Oklahoma Tax Commission v. Jefferson Lines, Inc.</u>, 514 U.S. at
177.  The passengers paid the tax which the bus companies
collected and then remitted to the state.  <u>Oklahoma Tax
Commission v. Jefferson Lines, Inc.</u>, 514 U.S. at 178.

     The legislative history of section 14505 therefore confirms
what the language of the statute reflects, to wit, a
Congressional intent to prohibit state taxes levied directly on
bus passengers, the transportation of such passengers and/or the
sale of bus tickets to such passengers as opposed to indirectly
on passengers through a direct tax upon the motor carrier
calculated by the number of trips in return for the use of state
facilities.  It may be true that the indirect effect of the
increase in the departure or user fee may be felt by the
passenger if the bus company decides to pass the fee increase
along to the passenger by increasing the price of a bus ticket.
The fee itself, however, falls outside the scope of section 14505
inasmuch as it is not imposed upon the passenger himself or the
ticket purchased by that passenger or the transportation of a
passenger in interstate commerce.

     Notwithstanding this clear legislative history evidencing a
Congressional purpose and intent to preempt only direct taxes
upon bus tickets and thereby overrule the <u>Jefferson Lines</u>
decision, a history that is consistent with and serves to confirm

14

the reach of the language of section 14505 as preempting state
fees lodged against the transportation of passengers and state
fees lodged against a passenger, plaintiffs urge this court to
focus upon the admittedly similarly phrased preemption statute
applicable to the airline industry, 49 U.S.C. § 40116(b), a
Supreme Court decision, <u>Northwest Airlines, Inc. v. County of
Kent, Michigan</u>, 510 U.S. 355 (1994), and the absence in section
14505 of the exemption contained in the foregoing airline
industry's preemption statute, 49 U.S.C. § 40116(e).  Plaintiffs
overstate the similarities between the language of section
40116(b) and the language of section 14505, which determinatively
omits the "indirectly" language contained in the predecessor to
section 40116(b).  Plaintiffs also overemphasize the
dissimilarity between section 40116(e) and section 14505's
failure to include an express exception to the preemption
language[13] as well as the ruling in <u>Northwest Airlines, Inc. v.
County of Kent, Michigan</u>, 510 U.S. at 862 n.9, that the language
of section 1513 was "'hardly ambiguous'" with respect to user
fees falling within the reach of section 1513(a).

First, plaintiffs' arguments place undue importance upon an
admittedly similarly phrased but nonetheless *separate* statute
governing a separate industry.  As such, they do not trump the

---

[13]  As discussed below, defendant correctly posits (Docket
Entry # 17, p. 10) that there was no need to include the
exception because section 14505 never had the more inclusive
"indirectly" language.

express language of section 14505 or the legislative history of
section 14505, which confirms the scope of that language.
To be sure, if the legislative history of section 14505 expressly
referred to the statutory exception in the state taxation of
airline landing fees, this court would afford plaintiff's
argument greater weight.  The only reference in the legislative
history of section 14505 vis-a-vis airline legislation, however,
is to "airline *tickets*," <u>see</u> H.R.Conf.Rep. No. 104-422, at 220
(1995);  H.R.Rep. No. 104-311, at 85 (1995), and the legislative
history invariably and consistently repeats itself by
characterizing the legislation as a means to overrule the
<u>Jefferson Lines</u> decision.

Further, as defendant cogently points out, the express
preemption statute governing state taxation of airlines, formerly
codified at section 1513, contained broader language which made
the scope or reach of that section extend to landing fees as
"indirect" taxes imposed on airline passengers thereby
necessitating the need for the exception set forth in section
1513(b).  The express preemption statute governing state taxation
of motor carriers, section 14505, contains no such broad
"indirect[]" language.  Although defendant's position, set forth
on pages eight through ten of its brief (Docket Entry # 17), is
correct and adopted by this court, this court adds the following
explanation as a means to further distinguish plaintiffs'

16

position.

State taxation of the airline industry is addressed in 49 U.S.C. § 40116, formerly codified at 49 U.S.C. § 1513.  Section 1513 is the version addressed by the Supreme Court in Northwest Airlines, Inc. v. County of Kent, Michigan, 510 U.S. 355 (1994). Importantly, the section included the "directly or indirectly" language that the current version, section 40116, omits.  The Supreme Court considered the "directly or indirectly" language in section 1315(a) significant in effecting the scope of the preemption language in section 1513(a) on *two* separate occasions. See Northwest Airlines, Inc. v. County of Kent, Michigan, 510 U.S. at 365 (quoting "'directly or indirectly'" language immediately prior to finding that airport landing fees fit within section 1513(a)); Aloha Airlines, Inc. v. Director of Taxation of Hawaii, 464 U.S. 7, 14 (1983) (quoting "'directly or indirectly'" language of section 1513 immediately prior to finding that property tax measured by gross receipts "constitutes at least an 'indirect' tax").[14]  More specifically, because the airport user

_____

[14]   Complicating matters and somewhat inexplicably, the recodified version of section 1513(a), i.e., section 40116(b), omits the words "directly or indirectly" because, as stated in the accompanying historical notes, they constitute "surplus."  49 U.S.C. § 40116, Historical and Statutory Notes.  Although neither party pointed this fact out to this court, it bears mentioning. Notwithstanding the characterization of the language as "surplus," the distinction between indirect and direct taxation dates back 200 years.  See United States v. West Virginia, 339 F.3d 212, 215 (4th Cir. 2003).  Even putting aside the distinction in the law of taxation, the terms directly and indirectly obviously have meaning although the drafters of

fees such as landing fees at issue in <u>Northwest</u> concerned fees
imposed directly upon the airlines, the Supreme Court recognized,
by implication, that the landing fees were fees levied
"indirectly" upon "'persons traveling in air commerce'" under the
statute.  <u>See</u> <u>United States v. West Virginia</u>, 339 F.3d 212, 220 &
n.4 (4th Cir. 2003) (C.J. Williams, dissenting) (Supreme Court in
<u>Northwest</u> "recognized that fees levied on airlines, such as
'[l]anding fees, terminal charges and other airport user fees,'
were levied indirectly on 'persons traveling in air commerce'").
The departure fees lodged against the motor carriers in this
case, like the landing fees lodged against the airline in
<u>Northwest</u>, amount to, at most, taxes that indirectly have an
effect upon a passenger traveling by motor carrier in interstate
commerce.[15]  As such, they lie outside the scope of state taxes
levied against a passenger or the sale of tickets to such a
passenger under section 14505.  In fact, the majority opinion in
<u>West Virginia</u>, construing the "directly or indirectly" language
in 5 U.S.C. § 8909(f), goes even farther along the attenuation
and finds that indirect taxes are limited to taxes imposed upon
the goods of the hospital payer and did not amount to the

---

section 40116 considered it no longer necessary to include the
language in light of the Supreme Court cases extending the reach
of the preemption to indirect taxes against passengers.

   [15]  This court's finding allows for the continuation of at
least the reasoning of the ruling in <u>New England Legal Foundation
v. Massport</u>, 883 F.2d 157, 170 (1st Cir. 1989), that the Supreme
Court in <u>Northwest</u> may have discredited.

statutory prohibition of an indirect tax upon the insurance

carrier.  <u>United States v. West Virginia</u>, 339 F.3d at 213-219.

Plaintiffs also rely on the legislative history of section

section 14501(c)(1),[16] which admittedly shows a Congressional

intent to have the corresponding airline preemption statute

function in the same manner as the corresponding motor carrier

preemption statute.[17]  <u>See</u> <u>Ace Auto Body & Towing, Limited v.</u>

<u>City of New York</u>, 171 F.3d 765, 771 (2nd Cir. 1999) (Congress

intended "to free the motor carrier industry from state and local

---

[16]  In adopting the House version, the conference report
describes section 14501 as "preserv[ing] existing prohibitions
against intrastate regulation of intercity bus rates, scheduling,
and discontinuances or reductions in service; the rates, routes,
or services of freight forwarders and transportation brokers; and
trucking prices, routes, or services."  H.R.Conf.Rep. No. 104-
422, at 219 (1995).
      Section 14501 itself is segmented into state laws effecting
scheduling of interstate transportation of motor carriers of
passengers, 49 U.S.C. § 14501(a), and state laws effecting the
prices, routes or services of interstate transportation of motor
carriers of property, 49 U.S.C. § 14501(c).  Plaintiffs focus on
the latter subsection.  (Docket Entry # 11, p. 13).

[17]  Section 14505, enacted in December 1995, appears in the
same chapter as four other statutes included in the ICCTA, 49
U.S.C. §§ 14501-14504, which Congress originally enacted in 1994
as part of the Federal Aviation Administration Authorization Act.
It nonetheless stands on a slightly different footing insofar as,
unlike the other statutes in the chapter, section 14505 had no
predecessor statute.  It was "a new provision."  S.Rep. No. 104-
176, at 48 (1995).  That said, this court does not entirely
discount the import of the related statutes.  After all, the
context of section 14505 must be viewed in reference to the
statutory framework as a whole.  <u>Medtronic, Inc. v. Lohr</u>, 518
U.S. at 486 ("any understanding of the scope of a pre-emption
statute must rest primarily on a fair understanding of
congressional purpose;" further noting that "Congress' intent" is
discerned primarily from the language and "the 'statutory
framework surrounding it" but that "the 'structure and purpose of
the statute as a whole'" are also relevant).

regulation and to put that industry on a playing field level with that of the air carrier industry, which had already been deregulated by the Airline Deregulation Act of 1978"); H.R. Conf. Rep. No. 103-677, at 85 (1994) (section 11501(h)[18] "is identical to the preemption provision deregulating air carriers . . . and is intended to function in the exact same manner with respect to its preemptive effects"). Legislative history, however, has limited reach when applied to an express preemption statute such as 14505. Furthermore, plaintiffs essentially ask this court to import the legislative history of a different statute, even though the statute appears in the same chapter, and apply it to section 14505. This court declines the invitation.

Plaintiffs also point out that section 14501(c) includes subsections that carve exceptions to its preemptive reach whereas section 14505 fails to contain similar exceptions. It is true that where "'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" City of Columbus v. Ours Garage and Wrecker Service, Inc., 536 U.S. 424, 433-434 (2002). Plaintiffs overestimate the similarities in the language of the two statutes in the chapter. Congress invariably and inevitably knows how to carve out an exception to a

_____
[18]    Section 11501(h) is now codified at section 14501(c).

20

preemption provision. Taking into account this principle, the language, which the legislative history confirms, nonetheless evidences that section 14505 does not have the global preemptive reach that plaintiffs espouse. If it did, the section would preempt the imposition of state highway tolls on the motor carriers, such as plaintiffs, traveling to and from Logan as well as the state gasoline taxes imposed upon the motor carriers traveling to and from Logan.

Plaintiffs' remaining argument, premised upon legislation addressing state taxation of Amtrak, is also unavailing. Although plaintiffs' cited statute, 49 U.S.C. § 24301(l), contains the "tax, fee, head charge, or other charge" language employed in section 14505, it applies to Amtrak and expressly prohibits state taxes imposed "on Amtrak," a uniquely quasi-governmental body. No such language prohibiting state taxes "on a motor carrier" exists in section 14505. Thus, in lieu of prescribing state taxes, fees and head charges lodged against the motor carrier directly, as in the case of Massport's fee, section 14505 prescribes state fees lodged against "a passenger" or the "transportation of a passenger" or "the sale of passenger transportation." Consistent with the language, Congress chose to preempt taxes imposed on the passenger and the sale of motor carrier tickets rather than "on the motor carrier."

Finally, in passing this court notes that the broad reach of section 14505 urged by plaintiffs would also preempt state tolls

imposed on the motor carriers or buses traveling to and from Logan along state roadways.  These tolls, like the Massport fees levied in exchange for the use of Logan, are lodged in exchange for the use of the state highways.  A clearer and more manifest Congressional purpose is required to extend the scope of the statute in such a manner.

In sum, absent a more clear and manifest Congressional purpose to extend section 14505's preemptive reach, the statute does not preempt the fees at issue in this case.  Consistent with and adhering to the import of the only reported decision addressing the issue, <u>Tri-State Coach Lines, Inc. v. Metropolitan Pier and Exposition Authority</u>, 732 N.E.2d 1137 (Ill.App. 2000), Massport is entitled to summary judgment.


<u>CONCLUSION</u>

In accordance with the foregoing discussion, defendant's motion for summary judgment (Docket Entry # 15) is **ALLOWED** and plaintiffs' motion for summary judgment (Docket Entry # 10) is **DENIED**.


  /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge


22